GUILLERMO GANDÍA, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE ARECIBO, recurrido.

*Número:* G-65-18       *Resuelto:* 25 de febrero de 1966

214

*Otero Suro & Otero Suro,* abogados del recurrente.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El Tribunal Superior, Sala de Arecibo, ordenó la protocolización de un testamento ológrafo otorgado por Flora Serrano, también conocida por María Flora Serrano. Reza así el referido documento, firmado el 24 de agosto de 1942:

"Testamento—Yo Flora Serrano natural y vecina de Arecibo Puerto Rico mayor de edad soltera propietaria hija de Ramona Serrano y Maximo Sanches naturales de Arecibo Puerto Rico— Doy fe de hallarme pleno gozo de mis derechos civiles y de la capacidad legal necesaria para este testamento, soy dueña en pleno propiedad de dominio de la siguiente finca urbana casa de madera de dos plantas sita en la plazuela de la monserrate número 26 Arecibo Puerto Rico mide nueve metros setenta y cinco centímetros de frente por dies con cincuenta y siete de fondo con un solar de once metros cinco centímetros de frente por once cuarenta siete de fondo linda a Sur izquierda con casa de Ulpiano Crespo y su espalda con Félix Kraidman y a su derecha con sucesión de Don Manuel Guillan, la cual lego a Guillermo Gandía Guzman menor de edad soltero naturar de Arecibo Puerto Rico hijo legítimo Don Francisco Gandía Urdas

y de doña Juana Guzman de Gandía ausente en reconocimiento y prueba de cariño y afecto por los servicios y favores prestados a mi y por la amistad que me une a él y su familia y por cuanto lego la sitada [*sic*] contodo [*sic*] mobiliario libre de gasto por tanto hago responsable y encargado de todos mis deudas y gastos de entierros enfermedad y funerales a el que los sufragara de los otros bienes legando la suma restante a el."

Guillermo Gandía solicitó se inscribieran a su nombre dos fincas que pertenecían a la testadora. Acreditó haber pagado la contribución de herencia. El Registrador denegó la inscripción mediante la nota que a continuación se copia:

"Denegada la Inscripción de Este documento, que es copia de la escritura número 2 otorgada en Arecibo en febrero 14, 1962, ante el Notario Lcdo. Ismael M. Herrero, Jr., sobre protocolización del testamento ológrafo de doña Flora Serrano, conteniendo los documentos que en la misma se relacionan y copia fotostática de dicho testamento ológrafo, la que viene acompañada de dos instancias, Nos. 1 y 2, dirigidas el Registrador que suscribe solicitando la inscripción a favor de don Guillermo Gandía de las dos fincas marcadas (a) y (b) en la instancia No. 1; por los siguientes motivos, a saber:

"Primero: Porque, contrariamente a lo que ordena y dispone el testamento, el peticionario don Guillermo Gandía solicita se inscriba a su favor a título hereditario las referidas fincas (a) y (b) objeto de la instancia No. 1, en la cual los distinguidos letrados que suscriben la misma, Otero Suro & Otero Suro, expresan textualmente que la testadora 'declaró heredero suyo al mencionado don Guillermo Gandía' (instancia No. 1, párrafo 2), cuando lo cierto es que en ninguna parte del testamento aparece tal declaración de heredero a favor del Sr. Gandía ni de ninguna otra persona.

"Segundo: Porque habiendo resultado inoficioso y sin ningún valor el legado dejado en dicho testamento al Sr. Gandía por haberlo enajenado en vida la testadora, no obstante ello el peticionario Sr. Gandía pretende, según se desprende de· dicha instancia No. 1, considerada a la luz del testamento, sustituir ahora ese legado ya inexistente y extinguido y sin valor legal alguno (art. 791 Cód. Civ.) por las dos fincas antedichas (a) y (b) que

solicita se inscriban a su favor a título hereditario sin que de la faz del testamento resulte ser heredero ni legatario de esas dos fincas. La finca que enagenó [*sic*] la testadora en vida es la que ella describe ampliamente en su testamento compuesta de casa y solar en la Plazuela Monserrate de Arecibo y que fue vendida por ella a favor del Sr. Félix Kraidman por escritura 41 otorgada en Arecibo en Mayo 26, 1953, ante el Notario Lcdo. Gustavo Zeno Sama, inscrita a favor del comprador al folio 60 del tomo 212 de Arecibo, finca 172, inscripción 6a.

"Tercero: Porque la finca señalada con la letra (b) en la instancia No. 1 consta inscrita al folio 48 del tomo 261 de Arecibo, finca número 147, inscripción 16a a favor de la Corporación de Renovación Urbana y Vivienda de Puerto Rico, agencia guberna-mental, a título de expropiación, siendo dicha agencia persona distinta de la testadora doña Flora Serrano Art. 20 Ley Hipote-caria.

"Cuarto: Porque lo único que bajo dicho testamento podría adquirir el peticionario don Guillermo Gandía, como legatario, es 'la suma restante' que refiere el testamento, luego de ser pagadas las deudas de enfermedad y funerales de la testadora 'de los otros bienes,' pues a este respecto dispone y ordena el testamento textualmente como sigue: ' . . . en reconocimiento y prueba de cariño y afecto por los servicios y favores prestados a mi y por la amistad que me une a él y su familia y por cuanto lego la sitada [*sic*] con todo mobiliario libre de gasto por tanto hago responsable y encargado de todas mis deudas y de entierros enfermedad y funerales a él que los sufragara de los otros bienes, LEGANDO LA SUMA RESTANTE A EL.' (Mayúsculas nues-tras.)

"Quinto: Porque dicha suma restante que refiere el testa-mento no es un bien sujeto a inscripción de acuerdo con la ley. Art. 2 Ley Hipotecaria.

"Sexto: Porque en el procedimiento a que se hace referencia en la subsiguiente instancia No. 2 fechada agosto 27, 1965, sobre protolización (sic) de testamento ológrafo, el Honorable Tribunal Superior lo que resuelve y ordena, a tono con la ley de procedi-mientos, es única y exclusivamente la protocolización del testa-mento ológrafo de doña Flora Serrano, sin pronunciamiento otro alguno. Por lo tanto, no existe derecho hereditario alguno que

pudiera ser objeto de inscripción en este Registro a base de la resolución del honorable tribunal sobre protocolización del testamento ológrafo, como se infiere de la instancia No. 2, página 3, párrafo 3, porque de la faz de esa resolución no surge tal derecho.

"SÉPTIMO: Porque, en resumen, la inscripción solicitada a favor del peticionario Sr. Gandía sobre las dos fincas (a) y (b) objeto de la instancia No. 1 y de la No. 2, no procede de acuerdo con la ley, ni como heredero ni como legatario de la testadora, ni por ningún otro concepto legal, por los fundamentos ya anteriormente expuestos."

De la anterior nota surge que la denegatoria se funda principalmente en el criterio del Registrador de que en el testamento protocolizado no se instituye heredero al peticionario.

Procede antes de considerar la cuestión planteada en este recurso examinar la disposición del Código Civil aplicable y la interpretación que a la misma le hemos dado en anteriores dictámenes. Además es conveniente estudiar la interpretación que le han dado en España, el Tribunal Supremo de aquel país y los comentaristas del código.

■ Dispone el Art. 617 del Código Civil (31 L.P.R.A. sec. 2122) que "El testador puede disponer de sus bienes a título de herencia o de legado. En la duda, aunque el testador no haya usado materialmente la palabra heredero, si su voluntad está clara acerca de este concepto, valdrá la disposición como hecha a título universal o de herencia."

■ Recientemente al considerar la interpretación de un testamento expresamos en *Vivaldi* v. *Registrador*, 86 D.P.R. 629, 641 (1962):

"Nuestra jurisprudencia se pronuncia en el sentido de descartar el valor sacramental de las palabras para atender más a la voluntad del testador que al sentido literal de aquéllas. *Luce & Co.* v. *Cianchini*, 76 D.P.R. 165, 171 (1954). Así, en *Junghanns* v. *Cornell University*, 71 D.P.R. 673 (1950), no obstante haberse usado por el testador las palabras *'devise'* y *'bequeath'*—significativas en el Derecho americano de la presencia de legado—, como

en la cláusula correspondiente se transmitía la universalidad que constituía el caudal hereditario, y no algo individual y determinado, sostuvimos que se trataba de una institución a título universal y no a título particular, y atribuimos a la entidad designada la cualidad de heredera, posición que revela un claro criterio objetivista en la consideración del llamamiento. En *Blanch* v. *Registrador,* 59 D.P.R. 730 (1942), utilizamos igual criterio al expresar que aun cuando el testador usó la palabra 'lego' al disponer de todos sus bienes, surgía clara su intención de instituirla heredera, y se consideró al efecto que el llamamiento se refería al *universum ius,* a que alude Ferrara."

Ver además *Rivera Padró* v. *Rivera Correa,* 93 D.P.R. 196 (1966).

Considerando el artículo correspondiente del Código Español, el 668, el Tribunal Supremo en sentencia de 10 de enero de 1920 expuso:

"Considerando que el precepto establecido en el art. 668 del Código civil, y en general, cuantos se refieren en el mismo cuerpo legal a la sucesión testada, no otra cosa denotan sino que lejos de supeditarse al ritualismo de nuestro antiguo derecho y al que informaban las instituciones romanas, hoy pueda el testador disponer de sus bienes, èn todo o en parte, lo mismo a título de herencia que a título de legado, dependiendo por consecuencia la situación de los que adquieren como sucesores universales o singulares, no de distinciones doctrinarias, a veces de puro nombre, sino de lo que de acuerdo con la realidad y la justicia se acomode a la verdad y a las leyes, con tal que se vea clara y expresa o por lógica interpretación se deduzca la voluntad de transferir a una persona determinada los bienes de que se dispone, con las inherentes responsabilidades o limitaciones establecidas por el testador, la ley o los derechos preexistentes a favor de otras personalidades."

■ Ahora bien, se ha aclarado que para comprobar la verdadera intención hay "que atender al contenido que ha querido dar a su disposición y comprobar si su propósito ha sido atribuir a una persona la universalidad o una cuota de su patrimonio, en cuyo caso éste será heredero, o una o varias relaciones determinadas, en cuyo supuesto será legatario."

Ossorio Morales, *Revista General de Legislación y Jurisprudencia,* tomo 169, págs. 138, 151, 152 (1941).

Interpretando este mismo precepto Bonel y Sánchez en 3 *Código Civil Español* a la pág. 193 expresan:

"El precepto de este artículo no otra cosa quiere decir sino que, lejos de supeditarse al ritualismo de nuestro antiguo derecho y al que preceptuaban las veneradas instituciones romanas, lejos de tener que disponer esencialmente de los bienes a título universal en favor del heredero, y apartándose de la teoría sustentada por aquellos de que donde no había institución de herederos no podía haber testamento, ni mucho menos haber legados, hoy puede el testador disponer de sus bienes lo mismo a título de herencia que a título de legado, de tal manera que aunque dicho testador en su última voluntad no pronuncie la palabra heredero para significar aquel que ha de sucederle en la totalidad ó parte de los bienes que de su pertenencia dispone, con tal que se vea clara y expresa su voluntad de transferir dichos bienes á una persona determinada, será válida tal disposición y se conceptuará como hecha á título universal ó de herencia."

Y Manresa en sus *Comentarios al Código Civil Español,* tomo 5, pág. 404 (ed. 1951) dice:

" . . . Es decir, que la norma o la regla adoptada para la resolución de la duda, es la intención del testador, que habrá de deducirse del tenor del mismo testamento, o depurarse por los principios generales que más adelante hemos de exponer para la inteligencia e interpretación de las últimas voluntades."

Consideremos el documento y sus disposiciones. Hay que dejar establecido que la testadora no tiene ni ascendentes ni descendientes. En el testamento legó un inmueble específico que describió al aquí peticionario, pero este legado quedó sin efecto por haberlo enajenado la testadora. Código Civil, Art. 791—31 L.P.R.A. sec. 2480. Pero en el documento además se expresa que hace responsable y encargado a la persona que en el mismo se menciona—el aquí peticionario—"de todas mis deudas y gastos de entierros, enfermedad y funera-

les a él que los sufragara de los otros bienes legando la suma restante a él."

Es evidente la intención de la testadora de encomendarle al aquí peticionario el pago de todas sus deudas y los gastos que resulten de su enfermedad y funerales y para ello le encomendó que los sufragara de los otros bienes que ella tuviera al momento de su deceso, dejándole a éste lo que sobrare después de pagar estos gastos. La testadora le legó un bien específico que luego vendió, pero además le encomendó el pago de sus deudas y los otros gastos que menciona a ser pagados de sus otros bienes, adjudicándole lo que sobrare. En el testamento no se menciona ninguna otra persona. Así, expresando la testadora que una vez pagadas sus deudas y los gastos últimos le lega la suma restante a él, es patente su propósito de atribuir al peticionario la universalidad de su patrimonio. Es un llamamiento a título universal.

Aplicando los principios enunciados en los dictámenes y comentarios antes citados y siguiendo la regla de hermenéutica contenida en el segundo párrafo del Art. 617 del Código Civil por interpretación lógica del testamento se deduce que fue la última voluntad de la testadora, instituir al aquí peticionario como su heredero, con el encargo de que sufragara los gastos que mencionaba en el testamento. Pagados éstos, lo restante era para él. La circunstancia de que no hubiera que vender los bienes para pagar los gastos no altera la situación.

En lo que evidentemente tiene razón el Registrador es en que no procede la inscripción a favor del peticionario del inmueble expropiado.

*Se revoca la nota recurrida y se ordena la inscripción del inmueble señalado con la letra (a) en la Instancia No. 1 a nombre del peticionario.*