EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Fernando Rafael Fernández Marrero<br>　　Demandante-Peticionario<br><br>　　v.<br><br>Inés María Fernández González<br>　　Demandada-Recurrida | Certiorari<br><br>2000 TSPR 137 |
| --- | --- |

Número del Caso: CC-1999-0366

Fecha: 26/09/2000

Tribunal de Circuito de Apelaciones: Circuito Regional II

Juez Ponente: Hon. Guillermo Arbona Lago

Abogados de la Parte Peticionaria:

　　　　　　　　　Pérez Orama & Guerrero Calderón
　　　　　　　　　Lcda. Belén M. Guerrero Calderón

Abogados de la Parte Recurrida:

　　　　　　　　　Rivera, Tulla & Ferrer
　　　　　　　　　Lcda. Lourdes G. Aguirrechu Salom
　　　　　　　　　Lcdo. Guillermo Ramos Luiña

Materia: Sentencia Declaratoria

　　Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Fernando Rafael Fernández
Marrero, *et als.*

  Recurrente

    v.        CC-1999-366

Inés María Fernández
González, *et als.*

  Recurrida

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 26 de septiembre de 2000.

En la interpretación de los testamentos debe prevalecer la voluntad del testador. *Calimano Díaz v. Rovira Calimano*, 113 D.P.R. 702 (1983). Guiados por este principio fundamental, nos corresponde determinar la validez de una cláusula de un testamento abierto sobre la valoración de unos activos del caudal relicto. Asimismo, nos toca adjudicar si se abre la sucesión intestada en cuanto a una porción vacante en el mismo.

I

Don Edmundo B. Fernández Látimer –el testador– falleció soltero por viudez el 29 de agosto de 1991. En su testamento dispuso que a sus cuatro hijos  –Fernando Rafael, María Patricia,

Pedro Juan y Manuel Benjamín, todos de apellido Fernández Marrero (en adelante "los peticionarios")- se les adjudicarían sus participaciones hereditarias en propiedad inmueble y en acciones de la Corporación Edmundo B. Fernández, Inc. (en adelante "la Corporación"), en partes iguales. Además testó a favor de la estirpe de su hijo pre-muerto, Edmundo Mario Fernández Marrero, integrada por sus nietos Inés María, Gloria Josefina, Edmundo José, Georgina Isabel, Jesús Alberto y Ruth Elena, todos de apellidos Fernández González (en adelante "los recurridos"). A éstos se les adjudicó la participación hereditaria específicamente en acciones de la Corporación.

Adicionalmente, dejó al Sr. Ramón L. Rodríguez Marrero, hijo de crianza del testador -también peticionario- un legado, a ser cargado al tercio de libre disposición, disponiendo que el mismo sería igual, pero no mayor, a la porción correspondiente a sus demás hijos. Dispuso que el mismo se haría efectivo en propiedad inmueble y/o en acciones de la propiedad del testador en la Corporación.

Así también, dejó a la Sra. Ruth Marrero, su esposa que luego le pre-murió, la porción restante del tercio de libre disposición.

En cuanto al modo de realizar la partición, el testador dispuso que las acciones corporativas se valorizarían según su valor en los libros de la Corporación a la fecha del fallecimiento del causante y que se tomaría como valoración de los inmuebles aquélla que fijara el Secretario de Hacienda.

El 11 de marzo de 1994, el Tribunal Superior de Puerto Rico emitió resolución de Declaratoria de Herederos con respecto a la porción vacante causada por la premoriencia de la esposa del testador. Limitó la declaración de herederos abintestato a dicha porción vacante.

De la anterior cláusula sobre la valoración de las acciones, surgió una controversia entre las partes, por lo cual los peticionarios solicitaron al Tribunal de Primera Instancia que dictara sentencia declarando que las acciones no podían ser adjudicadas a los herederos en función de su valor en los libros, y que era necesario recurrir al valor en el mercado respecto a todos los bienes que componen la herencia. Alegaron que la interpretación literal de dicha cláusula imposibilitaría el cumplimiento de la voluntad del causante y violentaría las legítimas de los herederos forzosos. Los recurridos, alegaron por su parte, que al tratarse de acciones de una corporación familiar, éstas no tienen un valor conocido en el mercado.

El foro de instancia resolvió que las cláusulas testamentarias referentes a la forma de valorar las acciones corporativas y los inmuebles se tendrían por no puestas, para cumplir con la voluntad equiparadora del testador. Por lo tanto

concluyó que era imperativo valorar todos los bienes, muebles e inmuebles, según su valor en el mercado a la fecha de adjudicación.

Inconformes con dicho dictamen, los recurridos presentaron apelación ante el Tribunal de Circuito de Apelaciones, que revocó el dictamen del tribunal de instancia. Determinó que la valoración de las acciones se haría conforme al valor de éstas en los libros. Además, concluyó que la esposa del testador fue instituida legataria de parte alícuota y no heredera y que por lo tanto no correspondía abrir la sucesión intestada en la porción vacante resultante de su premoriencia.

De esta determinación, los peticionarios recurrieron ante nos mediante petición de *certiorari*, aduciendo la comisión de los siguientes errores:

> Primer error: Erró el Honorable Tribunal de Circuito de Apelaciones al concluir que como consecuencia de los valores que Don Edmundo Fernández Látimer ("Don Edmundo") asignó sus acciones corporativas y a sus inmuebles, dicho testador estableció una mejora tácita.

> Segundo error: Erró el Honorable Tribunal de Circuito de Apelaciones al concluir que la esposa del testador fue instituida legataria de parte alícuota y no heredera y que no se abre la sucesión intestada en la porción vacante resultante de su premoriencia.

El 25 de junio de 1999 emitimos Resolución expidiendo el auto de *certiorari*. Luego de ello, las partes presentaron sus alegatos.

Contando con el favor de la comparecencia de ambas partes procedemos a resolver.

II

La sucesión se defiere por la voluntad del hombre manifestada en testamento, y a falta de éste, por disposición de la ley. Art. 604 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2086. El testamento es un negocio jurídico de especiales características, y como todo negocio jurídico tiene su médula en una voluntad, que se declara a través de las formalidades y solemnidades impuestas por la ley. *Moreda v. Roselli*, res. el 3 de marzo de 2000, 2000 T.S.P.R. 56, 2000 J.T.S. 69. Lo esencial, es dar cumplimiento a la voluntad del testador en la disposición de sus bienes en lo que no sea contrario a la ley. *Íd.*; *Torre Ginés v. ELA*, 118 D.P.R. 431 (1987). Así, se entiende que prevalecerá la voluntad real del testador.

En materia de interpretación de testamentos, es primordial atenerse al hecho de que toda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, a no ser que aparezca claramente que fue otra la intención del testador. En caso de duda se observará a lo que parezca más conforme a la intención del testador según el tenor del mismo testamento. Art. 624 del Código Civil, *supra*.

Es decir, en caso de duda, se debe tratar de indagar la voluntad real del testador a base de un análisis del testamento en su totalidad. *Moreda*, supra.[1]

El testador puede disponer en testamento de sus bienes, pero tendrá que observar lo señalado por el artículo 737 del Código Civil, *supra*, el cual dispone:

> Constituyen la legítima de los hijos y descendientes legítimos las dos terceras partes del haber hereditario del padre y de la madre.
> Sin embargo, podrán éstos disponer de **una parte de las dos que forman la legítima**, para aplicarla como mejora a sus hijos y descendientes legítimos o naturales legalmente reconocidos.
> La tercera parte restante será de libre disposición.
> (Enfasis nuestro.) 31 L.P.R.A. sec. 2391.

De esta disposición se deriva la procedencia de la figura de la mejora. En cuanto a ésta, el artículo 751 del Código Civil, *supra*, establece que el testador podrá disponer a favor de alguno o algunos de sus hijos o descendientes de una de las dos terceras partes destinada a legítima. Esta facultad de mejorar que tiene el testador tiene que ser declarada de forma expresa en el testamento. *Dávila v. Agraít*, 116 D.P.R. 549 (1985); *Pérez v. Pérez Agudo*, 103 D.P.R. 26 (1974). Allí expresamos, que en ausencia de una mejora ordenada expresamente por un testador, no debe presumirse que el testador tuvo en su ánimo el mejorar a un heredero. *Íd.* Sólo por excepción puede entenderse que la mejora se ha hecho tácitamente. Así por ejemplo, se ha entendido que cuando existe una donación no colacionable a un descendiente que no es heredero forzoso, se reputará mejora en lo que exceda del tercio de libre disposición, Art. 752 del Código Civil, *supra*; *Dávila v.* Agrait, supra.[2] Así también, una manda o legado hecha por el testador a uno de los hijos o descendientes, sólo se reputará mejora en lo que se exceda de la parte libre, Art. 755 del Código Civil, *supra.*

El testador puede además, hacer la partición de sus bienes por acto entre vivos o por última voluntad, es decir en su testamento. Si lo hace, se pasará por la partición, siempre y cuando no perjudique la legítima de los herederos forzosos. Art. 1009 del Código Civil, *supra.* Dicha partición no puede ser impugnada por causa de lesión, sino en el caso de que se perjudique la legítima de los herederos forzosos o de que **aparezca, o racionalmente se presuma, que fue otra la voluntad del testador**. Art. 1028 del Código Civil, *supra.* Cumplido alguno de estos requisitos, la partición hecha por el testador podrá se rescindida por causa de lesión en más de la cuarta parte, atendiendo el valor de las cosas cuando fueron adjudicadas. Art. 1027 del Código Civil, *supra.*

---

[1] Puig Brutau, <u>Fundamentos de Derecho Civil</u>, Barcelona, Ed. Bosch, 1977, Vol. 2, T.V, págs. 249-252.

[2] El Art. 737 del Código Civil, *supra*, dispone que se podrá disponer de una parte de las dos que forman la legítima, para aplicarla como mejora a los hijos y descendientes legítimos. Por lo tanto, un nieto puede ser mejorado aunque su padre viva. Es decir, pueden ser mejorados los descendientes legítimos: hijos, nietos, biznietos. *Dávila v. Agrait*, supra.

La lesión, perjuicio o error en la estimación ha de llegar a la cuarta parte del valor de los bienes hereditarios que realmente correspondan al heredero en la división.[3] Pero es importante destacar que para calcular el importe de la lesión es necesario tener en cuenta: (1) **el valor verdadero de todos los bienes de la herencia**; (2) la cuota del heredero y con ella el valor que deben tener los bienes que se le adjudiquen; y (3) **el valor real**, al tiempo de la partición, de las cosas que se le adjudicaron, y si se hizo pago con bienes colacionados por el mismo heredero, el que tenían estos bienes al tiempo de la donación.[4]

Así también, para determinar o fijar la legítima de los herederos forzosos se atenderá al valor de los bienes que quedaren a la muerte del testador. Art. 746 del Código Civil, *supra,* equivalente al artículo 818 del Código Civil Español. El valor a que se refieren estos artículos es al **valor en venta** y no el valor en renta, y hay que prescindir del valor de afección.[5] Así lo reitera Manresa al señalar que, formada la masa activa de los bienes que existen en la herencia, se procede a su estimación con arreglo a su estado en la época del fallecimiento, teniendo en cuenta el **valor real y verdadero** que tengan para todos, y nunca el valor de afección.[6]

Así también, el Profesor González Tejera nos indica:

> Cuando hay donaciones con cargo a la legítima, es importante que la valoración de los bienes relictos se haga a la fecha de la muerte del causante porque valorar posteriormente puede afectar adversamente a unos herederos y dar ventajas a otros. Es a la muerte del causante que se concretan los derechos de los interesados. La valoración que el Departamento de Hacienda haya hecho de la propiedad inmueble no siempre puede ser aceptada como el avalúo de los bienes relictos porque a veces esa tasación no refleja el valor en el mercado de dichos bienes. **El avalúo debe reflejar en todo momento valores reales para todos los elementos del activo del caudal, de manera que en su día no se perjudiquen unos interesados y se beneficien otros.** (Enfasis nuestro.)[7]

Queda reiterado que para determinar si hay lesión en más de la cuarta parte en cuanto a la partición y para determinar la legítima, hay que valorar los bienes de la herencia según su valor real.

Esta conclusión no altera nuestro dictamen en *Sucn. Del Coro Lugo v. Srio. de Hacienda,* 130 D.P.R. 1 (1992), en relación a la valoración de acciones que no trafican en bolsas de valores reconocidas. Allí expresamos que

---

[3] Manresa y Navarro, <u>Comentarios al Código Civil Español</u>, Madrid, Ed. Reus, 1955, T. VII, pág. 861.

[4] *Íd.*

[5] Puig Brutau, <u>Fundamentos de Derecho Civil</u>, Barcelona, Ed. Bosch, 1983, Vol. 3, T.V, pág. 120, nota 11.

[6] Manresa y Navarro, <u>Comentarios al Código Civil Español</u>, Madrid, Ed. Reus, 1973, Vol. I, T.VI, pág. 687.

---

[7] Efraín González Tejera, <u>Derecho Sucesorio Puertorriqueño</u>, San Juan, 1983, Vol. II, pág. 402.

para fines contributivos éstas se valorizarán según el valor conocido en el mercado y de no ser éste conocido se tomará su valor en los libros de contabilidad. No obstante este dictamen fue dentro del contexto contributivo. Este no tiene ningún efecto en la determinación y cómputos de las legítimas de los herederos forzosos, determinación que se rige exclusivamente por el campo del Derecho Civil puro.

### III

En el presente caso, para interpretar el testamento de Don Edmundo B. Fernández, nos corresponde en primer lugar, examinar el texto del mismo, por lo cual transcribimos las cláusulas pertinentes a las controversias presentadas.

> QUINTO: En este acto de última voluntad, instituye como sus únicos y universales herederos, en cinco (5) partes iguales y en la legítima que dispone la Ley, o sea, en dos terceras partes (2/3) de su caudal hereditario, y sujeto a las disposiciones que posteriormente se consignarán, a sus mencionados hijos Fernando Rafael, María Patricia, Pedro Juan y Manuel Benjamín, todos de apellidos Fernández Marrero en una quinta (1/5) parte de esas dos terceras (2/3) partes para cada uno de ellos, y la otra quinta (1/5) parte para sus nietos Ruth Elena, Inés María, Gloria Josefina, Edmundo José, Georgina Isabel y Jesús Alberto, todos de apellidos Fernández González, en representación de su hijo pre-fallecido Edmundo Mario Fernández Marrero.----------------------
> SEXTO: Haciendo uso ahora de las facultades que le concede el Código Civil, el Testador, para el pago de las respectivas participaciones hereditarias de sus herederos dispone ahora lo siguiente:------------------------------(A)---Que a sus hijos Fernando Rafael, María Patricia, Pedro Juan y Manuel Benjamín, todos de apellidos Fernández Marrero, se les adjudiquen sus participaciones hereditarias en propiedad inmueble del Testador y en acciones del Testador en la corporación Edmundo B. Fernández, Inc., todos en partes iguales. El Testador desea otorgar las participaciones de este modo ya que tiene plena confianza en que en su oportunidad ellos llevarán a cabo la partición en forma justa y equitativa, como hasta ahora han sabido hacerlo como buenos hermanos.----------------------------(B)---Que a su hijo fallecido Edmundo Mario Fernández Marrero, representado por sus hijos nombrados en este testamento, se les adjudique su participación hereditaria en acciones de mi propiedad en la corporación Edmundo B. Fernández, Inc.[....][Para] la adjudicación de las acciones corporativas que habrá de recibir en pago de su participación hereditaria, al igual que toda adjudicación testamentaria de acciones corporativas en Edmundo B. Fernández, Inc., se valorizarán dichas acciones a su valor en los libros de la corporación, a la fecha de mi fallecimiento.------------(C)---Para equiparar moralmente la participación que cada uno de sus hijos habrán de recibir en sus bienes, se dispone que su hijo de crianza Ramón Luis Rodríguez Marrero recibirá como legado, dentro del tercio de libre disposición, una participación igual pero no mayor que la que cualesquiera de sus hijos, sea Fernando Rafael, María Patricia, Pedro Juan o Manuel Benjamín, reciba como participación hereditaria. Este legado se hará efectivo en propiedad inmueble y/o en acciones de mi propiedad en la corporación Edmundo B. Fernández, Inc.---[....]
> NOVENO: A los fines de valorar las adjudicaciones de este testamento se dispone e instruye al albacea para que tome como valoración de los inmuebles, aquella que fije el Secretario de Hacienda para los fines de liquidación e imposición de la contribución sobre bienes relictos, y en caso de que tal valor fuere inferior al importe de la participación del heredero, o legatario, se le complemente su cuota legítima en acciones de mi propiedad en Edmundo B. Fernández, Inc. O en caso de que el valor excediere el importe de la cuota legítima el heredero deberá entonces reintegrar al caudal la diferencia en metálico.

De las cláusulas anteriores, se desprende lo dejado a cada uno de los instituidos en el testamento. Más importante aún, se desprende la voluntad del testador de equiparar a todos los nombrados. Es patente el alto sentido de igualdad y equiparación que el testador profesa en su testamento hacia sus hijos, sus nietos y hacia su hijo de crianza.

No obstante, al hacer la partición, el testador, haciendo uso de la facultad que le concede el Código Civil, dispuso cómo se iban a valorar las acciones y los inmuebles dejados en el testamento. Pero no vislumbró las consecuencias de ello, pues si por un lado se adjudican las acciones al valor en los libros de la Corporación, nos encontramos ante el problema de que a los que se le adjudicarán inmuebles y acciones se verán perjudicados *versus* los nietos, a quienes hay que pagarles sus legítimas con acciones únicamente. Ello así, ya que la diferencia en el valor según los libros y el valor real de dichas acciones es abismal. Esto queda patente cuando vemos que el valor en los libros de una acción en la Corporación a la fecha del fallecimiento del testador era de $491.20, y el valor real de éstas se estimaba en aquélla fecha en $1,826.48.[8]

Esta diferencia en valor se debe a que las acciones corporativas representan el capital corporativo de Edmundo B. Fernández, Inc., Corporación que posee valiosos activos cuyos valores no se reflejan en los libros de la misma. Se trata de una corporación que posee una valiosa finca de alrededor de doce (12) cuerdas cuyo costo es insignificante comparado con su valor millonario en el mercado. Un ejemplo del valor de esta finca lo representa el hecho de que en el año 1991, los recurridos vendieron alrededor de 4 cuerdas colindantes por $936,000.00.

Además, la Corporación es poseedora de bienes intangibles, los cuales tampoco están considerados en el valor en los libros de la misma. Ejemplo de estos bienes son la fórmula química del Ron Barrilito, la marca de fábrica de este producto y del Alcoholado Santa Ana y Alcoholado Boricua y la plusvalía de la Corporación.

Con ello en mente, es razonable concluir que a los que les tocan únicamente acciones habrá que adjudicarles muchas más de éstas, que a los que les corresponden también inmuebles, para completar la quinta parte que les corresponde como legítima larga. Esto tiene la consecuencia de que los nietos tengan muchas más acciones, que alegadamente valen poco, pero que una vez negocien con las mismas saldrán beneficiados, porque éstas entonces se venderán según su valor real en el mercado. De esta forma, los nietos del testador estarán realizando una ganancia, de la cual no participarían sus

---

[8] Esta información la proveyó el albacea al presentar la Planilla de Caudal Relicto ante el Departamento de Hacienda.

coherederos –los peticionarios–, a quienes sin embargo, el testador expresamente equiparó en su testamento.

A tenor de lo anterior, no podemos concurrir con el tribunal apelativo cuando resolvió que la diferencia en valor representaba una mejora tácita. Esto así, ya que como expusiéramos, la voluntad de mejorar tiene que ser declarada de forma expresa en el testamento. *Perez v. Pérez Agudo,* supra. En ausencia de ello y no estando presente ninguna de las excepciones discutidas con anterioridad, no procede en este caso concluir que se hizo una mejora tácita. Esto, ya que el testador no excusó de colacionar las donaciones que hizo a sus hijos sobrevivientes ni a la estirpe de su hijo prefallecido, sino que expresamente ordenó a todos colacionar. Tampoco existen legados a favor de ninguno de los herederos forzosos. En conclusión, luego de nuestro análisis del testamento, no albergamos duda de que no aplica a este caso la doctrina de la mejora tácita.

A nuestra conclusión, abunda el hecho esencial y principalísimo de que el testador agotó las dos terceras (2/3) partes de su haber hereditario, ya que dispuso que instituía a sus herederos **"en cinco (5) partes iguales y en la legítima que dispone la Ley, o sea, en dos terceras (2/3)** partes de su caudal...." (Enfasis nuestro.)

De igual forma, el acápite SEXTO (B) va en contra de lo dispuesto en el artículo 746 del Código Civil, *supra,* ya que el valor a atenderse al momento de determinar las legítimas es el valor real y verdadero de los bienes al momento de la muerte del testador. *Véase:* Puig Brutau, *op cit.,* Manresa y Navarro, *op cit.* y González Tejera, *op. cit.*

Así también, el acápite NOVENO está en contravención al referido artículo, ya que dispone que las propiedades inmuebles se adjudiquen según el valor fijado por el Secretario de Hacienda para fines de la contribución sobre bienes relictos. La valoración que el Departamento de Hacienda haya hecho, no siempre puede ser aceptada como el avalúo de los bienes relictos porque a veces esa tasación no refleja el valor en el mercado de dichos bienes. *Véase:* González Tejera, *op. cit.* Adjudicar los inmuebles según el valor asignado por el Secretario de Hacienda tendría el mismo efecto que valorar las acciones según el valor en los libros, pero en este caso quienes se verían afectados serían los nietos, a quienes no se les adjudicarán inmuebles, provocándose también una situación contraria a la voluntad equiparadora del testador.

De la única forma que podrían ponerse en vigor dichas cláusulas, sería si las cinco adjudicaciones o lotes de bienes para el pago de hijuelas fueran exactamente iguales. Es decir, si a cada hijo y a la estirpe de su hijo fallecido se le adjudicaran igual número de acciones corporativas e igual cuota en los bienes

inmuebles. En dicho caso, sería inmaterial el valor de adjudicación porque todos recibirían exactamente lo mismo y se cumpliría con la voluntad del testador. No obstante, esto no es posible ya que la voluntad del testador es que a sus hijos se le adjudiquen inmuebles y acciones y a los nietos acciones únicamente.

Esto trae la conclusión ineludible de que los efectos de realizar la partición de esa forma iría en contra de la voluntad equiparadora que permea en el testamento. Lo que da base a que se impugne la partición hecha por el testador sobre ese particular. Art. 1028 del Código Civil, *supra.*

Por entender que el impacto de poner en vigor los acápites SEXTO (B) y NOVENO del testamento, va en contra del derecho aplicable y en contra de la voluntad del testador, concluimos que las mismas deberán tenerse por no puestas, solamente en cuanto a la valoración de los bienes se refiere.

Es importante aclarar, que mediante este curso decisorio que tomamos hoy, no estamos resolviendo ningún asunto relacionado a posibles lesiones de legítimas ni mucho menos si existe o no lesión en más de la cuarta parte según lo dispuesto en el artículo 1027, *supra.* Nuestro dictamen va dirigido a pautar que para todos los fines, los bienes del caudal hereditario de Don Edmundo B. Fernández serán valorados según su valor real.

Así también, entendemos meritorio precisar que, a pesar del dictamen que hacemos hoy, continúa vigente la regla general de que el testador, al realizar la partición en su testamento, puede señalar el valor que en la partición haya de ser atribuido al bien o bienes hereditarios objeto de dicha asignación o imputación por él dispuesta.[9] Estas valoraciones realizadas por el testador serán respetadas para fines de adjudicar los bienes, y no para computar legítimas, siempre y cuando exista adecuación entre dicha valoración y la voluntad del testador. Sólo en casos como el que nos ocupa hoy, en los cuales racionalmente se puede llegar a obtener una voluntad del testador de que exista adecuación entre la ordenación testamentaria y la de lotes, se puede dejar sin efecto la valoración hecha por el testador.[10]

IV

El segundo error señalado por los peticionarios va dirigido a determinar qué efecto tuvo la premoriencia de la esposa del testador, careciendo su testamento de cláusula de sustitución. Veamos.

---

[9] Luis Díez-Picaso y Antonio Gullón, <u>Sistema de Derecho Civil</u>, Madrid, Ed. Tecnos, 7ma. ed., Vol. IV, pág. 613.

[10] *Íd.*

El testador puede disponer de sus bienes a título de herencia o de legado. En la duda, aunque el testador no haya usado materialmente la palabra heredero, si su voluntad está clara acerca de este concepto, valdrá la disposición como hecha a título universal o de herencia. Art. 617 del Código Civil, *supra.* Heredero es aquel sucesor a quien es atribuida la totalidad de las relaciones patrimoniales del difunto o una parte alícuota de aquéllas, independientemente del nombre con que sea designado, designándose como legatario a aquel sucesor en bienes o derechos determinados. *Blanco v. Sucesión Blanco Sancio,* 106 D.P.R. 471 (1977). Así, aunque en el testamento el testador use la palabra *lego*, puede estar instituyendo heredero si se trata de un llamamiento a la universalidad del caudal hereditario. *Cintrón Vélez v. Cintrón de Jesús,* 120 D.P.R. 39 (1987).

Para determinar si una persona es heredero o legatario, cuando el testador no haya usado materialmente la palabra heredero al disponer de sus bienes, en caso de duda valdrá la disposición como hecha a título universal o de herencia, si su voluntad está clara acerca de dicho concepto. *Gandía v. Registrador*, 93 D.P.R. 213 (1966).

Por su parte, el legado de cuota alícuota o legado parciario es el que se hace a favor de una o varias personas de una porción ideal, de una fracción de la totalidad del caudal. *Fernández Franco v. Castro Cardoso,* 119 D.P.R. 154 (1987). Este es un legado cuyo contenido se determina por el testador como fracción aritmética de su patrimonio total, como parte o cuota abstracta ideal del mismo, o, legado por el cual el testador dispone a título particular de una porción proporcional de su herencia. *Vivaldi v. Registrador,* 86 D.P.R. 629 (1962).

Así, en *Blanco v. Sucesión,* supra, dispusimos que constituye una herencia, no un legado, aquella disposición denominada por el testador como tercio de libre disposición, mediante la cual designa a sus nietos como beneficiarios del mismo, cuando dicho testador no hace legado singular de entre sus bienes a sus nietos y, por el contrario, les deja una porción abstracta de sus bienes, sujeta a liquidación y determinación particional, como lo están los otros dos tercios de la masa hereditaria. Máxime, cuando dicho testador no llega ni a la expresión mínima de dar título de legado a la cuota de sus nietos. Aun cuando se utilice la palabra *lego*, la designación a favor de una persona se entenderá como una institución de heredero a título universal, cuando dicha institución comprende la universalidad del caudal restante del testador. *Vivaldi v. Registrador*, supra.

Sin embargo, luego en *Torre Ginés v. E.L.A.,* supra, hicimos un análisis muy cuidadoso de la figura del legado de parte alícuota que aprovecharemos hoy para explicar y aplicarla al presente caso.

La existencia del legado de parte alícuota implica la pugna de dos criterios históricos: los sistemas llamados subjetivos y objetivos. El *romano*, de matiz subjetivo, considera heredero a aquel sucesor a quien el testador designe como tal heredero, independientemente, en principio, de que le instituya en toda la herencia, en una parte alícuota de ella o en una cosa cierta y determinada. El llamado *germánico* o *moderno*, de signo objetivo, conceptúa como heredero a quien sea llamado por el difunto a adquirir la totalidad o universalidad de las relaciones jurídicas objeto de la transmisión, o una parte alícuota del caudal, haya sido o no designado como heredero. *Torre Ginés v. E.L.A.*, supra, citando a Castán.

En los casos anteriores a *Torre Ginés*, supra, entiéndase, *Blanco v. Sucesión Blanco Sancio,* 106 D.P.R. 471, (1977); *Gandía v. Registrador*, 93 D.P.R. 213 (1966); *Vivaldi v. Registrador*, 86 D.P.R. 629 (1962), parecía que habíamos adoptado la posición objetiva. No obstante en *Torre Ginés*, aclaramos que la posición objetiva se usó como mecanismo para dar cumplimiento a la verdadera voluntad del testador por ésta no resultar clara, de acuerdo con los hechos particulares de cada caso. Por lo tanto, se resolvió al amparo del artículo 617, *supra*, respecto a que en caso de duda, aunque el testador no haya usado materialmente la palabra heredero, si su voluntad está clara acerca de este concepto, valdrá la disposición como hecha a título universal o de herencia. *Torre Ginés*, supra, a las págs. 455-456.

No obstante, en *Torre Ginés* aplicamos la figura del legado de parte alícuota por ser clara la intención del testador. Favorecimos el uso de esta figura, ya que el efecto de admitir la existencia de la misma frente a la institución de herederos, es permitir al testador la libertad de instituir un heredero para que le suceda en el activo y pasivo de la herencia, colocándose en su lugar en cuanto a todas las relaciones jurídicas transmisibles o de nombrar a un legatario parciario para que éste obtenga una fracción del saldo activo resultante después de saldar las deudas del causante. *Torre Ginés*, supra, a las págs. 460-61.

V

En el presente caso el tribunal apelativo concluyó que como la legítima larga se agotó, la mejora tácita que instituyó el causante se imputa o se paga del tercio de libre disposición, ya que por razón del fallecimiento de la esposa del causante, la llamada mejora tácita adquiere vigencia. Así también, resolvió que la esposa prefallecida era heredera y en reconsideración la catalogó como legataria de parte alícuota, por lo cual la porción vacante se refundía en el caudal hereditario.

Anteriormente discutimos que no procede aplicar al presente testamento la figura de la mejora tácita, y nos basta ahora remitir a lo allí expuesto. Nos corresponde entonces evaluar, si a la luz de las citadas disposiciones legales,

la esposa premuerta era heredera o legataria de parte alícuota, para así determinar si sobre la porción vacante causada por su premoriencia se abre la sucesión intestada o si dicha parte se refunde en la masa de la herencia.

En el acápite SEXTO (D) del testamento el testador dispuso:

> (D)---En adición a la cuota usufructuaria viudal que le otorga la Ley, el Testador dispone que se le otorgue un **legado** a su esposa Ruth Marrero Vargas, equivalente al **remanente del tercio de libre disposición, una vez se descuente de dicho tercio el legado que se dispone en este testamento al legatario Ramón Luis Rodríguez Marrero y/o cualquier otra suma o partida que corresponda por Ley o por este testamento al tercio de libre disposición.** (Énfasis nuestro.)

De esta cláusula, surge la controversia en torno a si el testador tuvo la intención de instituir heredera a su esposa o de nombrarla legataria. De un estudio de la cláusula se desprende que el testador tuvo la intención de instituir a la esposa como legataria de parte alícuota, pues expresa la intención clara de que se le otorgue un **legado** equivalente al remanente del tercio de libre disposición. Es decir, dispuso para su esposa una cuota abstracta ideal de su patrimonio. Además, dispuso que dicho legado se pagaría luego de pagar el legado del hijo de crianza y de pagar cualquier otra partida que correspondiera a dicho tercio. O sea, se desprende de la cláusula su intención de que su esposa fuera legataria y no heredera, pues diseñó la cláusula para que su esposa obtuviera una fracción del saldo activo resultante después de saldar las deudas del causante y de que se pagara el otro legado. *Torre Ginés*, supra.

Resulta clara la intención del testador en este sentido, por lo cual no albergamos duda alguna de su voluntad. Robustece esta conclusión el hecho de que el testador, en el inciso QUINTO de su testamento instituyó como únicos y universales herederos a sus cuatro hijos y a la estirpe de su hijo premuerto.

Concluimos que la esposa del causante era legataria de parte alícuota y no heredera, por lo cual procede determinar qué sucede con la porción que quedó vacante debido a su premoriencia.

A estos efectos es meritorio precisar, que existe una distinción entre cuándo se abre la intestada, y cuándo los bienes se refunden en la masa hereditaria. Lo primero ocurre cuando se trata de una vacante provocada por uno instituido como heredero, según lo dispone el artículo 875 del Código Civil, *supra*, el cual dispone que la sucesión legítima -entiéndase la sucesión intestada- tiene lugar cuando el instituido como heredero muere antes que el testador, sin que haya lugar al derecho de acrecer.

La segunda instancia tiene lugar cuando se trata de legatarios. Es decir, cuando un legatario no puede admitir un legado, la sucesión intestada no tiene

lugar, sino que dicho legado se refunde en la masa de la herencia, fuera de los casos de substitución y del derecho de acrecer. Artículo 810 del Código Civil.

En el presente caso, nos encontramos ante una legataria de parte alícuota que premurió al *de cuius*, por lo cual ésta no pudo aceptar el legado. A tenor y en ausencia de una cláusula de sustitución, el legado dejado a la esposa se refunde en la masa hereditaria, a menos que entre en vigor el derecho de acrecer. En este sentido existen dos posibilidades: que el derecho de acrecer tenga lugar entre los herederos o entre los legatarios. Veamos.

El derecho de acrecer en la sucesión testamentaria tiene lugar cuando dos o más son llamados a una misma herencia, o a una misma porción de ella, sin especial designación de partes; y uno de los llamados muere antes que el testador, o renuncia la herencia, o es incapaz de recibirla. Art. 937 del Código Civil, *supra*. Este derecho también tiene lugar entre los legatarios en los términos establecidos para los herederos. Art. 942 del Código Civil. Cualquiera que sea el derecho concedido por el testador a varios herederos o a varios legatarios conjuntamente, motivan el derecho de acrecer cuando una de las porciones queda vacante por renuncia, incapacidad o premoriencia.[11]

En el caso de los herederos forzosos, el derecho de acrecer sólo tiene lugar cuando la parte de libre disposición se deje a dos o más de ellos, o a alguno de ellos y a un extraño. Art. 940 del Código Civil, *supra*. De no ser así, no tendrá lugar el derecho de acrecer y la porción vacante del instituido, a quien no se hubiese designado substituto, pasará a los herederos legítimos del testador. Art. 941 del Código Civil, *supra*.

En este caso no aplica el derecho de acrecimiento entre los herederos forzosos ya que el tercio de libre disposición no fue dejado a ninguno de ellos. Por lo tanto, la porción vacante en dicho tercio no acrece a éstos. Tampoco se abre la intestada sobre dicha porción del tercio de libre disposición pues estamos ante un legado que no pudo aceptarse por la legataria, por lo cual esa porción se refunde a la masa hereditaria, salvo el derecho de acrecer entre legatarios, que como vimos está avalado por el artículo 942 del Código Civil, *supra*. Así lo entiende Manresa cuando dice que "el 986 [equivalente a nuestro artículo 941] [es] especial para la herencia, pues con relación a los legados, debe sustituirse por el 888 [equivalente a nuestro artículo 810], según el cual, cuando el legatario no pueda o no quiera admitir el legado...se refundirá en la masa de la herencia, fuera de los casos de sustitución y derecho de acrecer."[12]

A la luz de lo anterior, procede determinar si aplica el derecho de acrecer entre legatarios, es decir entre la esposa del testador y el hijo de crianza.

---

[11] Manresa y Navarro, *op cit.*, a la pág. 398.

Concluimos que no es de aplicación la figura del acrecimiento, ya que por un lado el testador dejó como legado a su hijo de crianza una participación igual, pero no mayor que la que cualquiera de sus hijos y por otro lado dejó a su esposa un legado equivalente al remanente del tercio de libre disposición. Por lo tanto, no se cumple con el requisito de que no haya especial designación de parte, pues efectivamente sí existió dicha especial designación.

A tenor, no existiendo el derecho de acrecer y en ausencia de una cláusula de sustitución, el legado parciario dejado a la esposa del testador se refunde en la masa hereditaria. El efecto de ello será que dicho legado formará parte del caudal hereditario, sujeto a la voluntad dispositiva especificada en el testamento por Don Edmundo B. Fernández.

Por todos los fundamentos expuestos con anterioridad, revocamos la sentencia del Tribunal de Circuito de Apelaciones en cuanto resolvió que la valoración de los bienes del caudal se haría según dispuesto por el testador y modificamos el dictamen del foro *a quo* en torno a su determinación de que la esposa del testador era legataria de parte alícuota, para atemperarla a las normas contenidas en la presente Opinión. Se devuelve el caso al Tribunal de Primera Instancia para procedimientos compatibles con lo aquí resuelto.

Se dictará la sentencia correspondiente.

Baltasar Corrada del Río
Juez Asociado

---

[12] *Íd.*, a la pág. 397.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Fernando Rafael Fernández
Marrero, et als.

    Recurrente

                      CC-1999-366

      v.

Inés María Fernández González,
et als.

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 26 de septiembre del 2000.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, revocamos la sentencia del Tribunal de Circuito de Apelaciones en cuanto resolvió que la valoración de los bienes del caudal se haría según dispuesto por el testador y modificamos el dictamen del foro *a quo* en torno a su determinación de que la esposa del testador era legataria de parte alícuota, para atemperarla a las normas contenidas en la presente Opinión. Se devuelve el caso al Tribunal de Primera Instancia para procedimientos compatibles con lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón concurre con el resultado sin opinión escrita.

                              Isabel Llompart Zeno
                     Secretaria del Tribunal Supremo