La Juez Asociada Señora Rodríguez Rodríguez
emitió la opi-nión del Tribunal.
La esencia de la controversia que nos ocupa gira en torno al procedimiento para la inscripción en el Registro de la Propiedad del derecho hereditario.
I
La Sra. Margarita Collazo Félix (causante) falleció tes-tada a los noventa y seis años de edad, el 14 de junio de *780 2003. Ésta había contraído primera y únicas nupcias con don Rafael Rivera del Valle, quien le premurió. La cau-sante no procreó hijos.
Años antes de su deceso, doña Margarita había otorgado un testamento abierto ante el notario Jorge Puig. En éste, la señora Collazo Félix había instituido como sus únicos y universales herederos a sus tres hermanos de nombres: Rodolfo, Mercedes y Luis Gilberto Collazo Félix. Éstos, a su vez, fueron nombrados albaceas testamentarios. El tes-tamento indicaba que, si alguno de los herederos de doña Margarita le premoría, la aportación designada para ese heredero pasaría a sus hijos. Respecto a la hermana de la causante, Mercedes, quien no tuvo hijos, el testamento se-ñalaba que de ésta premorir a la causante, su participación acrecería a favor de los hijos de su hermano Rodolfo.(1) Los sobrinos de doña Margarita, por lo tanto, se instituyeron como herederos sustitutos. Los tres hermanos de la cau-sante le premurieron.
Acaecido el óbito de la señora Collazo Félix, los herede-ros sustitutos —a saber: Áurea Collazo Llauger, Enid Co-llazo Gutiérrez, Rodolfo Collazo Gutiérrez, Betzaida Co-llazo Gutiérrez, Carlos Collazo Gutiérrez, Luis Collazo Sola y María Mercedes Collazo Sola— solicitaron del Re-gistrador de la Propiedad, mediante “Instancia sobre ins-cripción de bienes hereditarios”, la inscripción a su favor de cierta propiedad inmueble perteneciente a la causante. La instancia se presentó en el Registro de la Propiedad, Sección I de Caguas el 19 de enero de 2005 y fue anotada en el Asiento 672 del Libro Diario 1109, con entrada Núm. 632.
*781 La instancia presentada se acompañó con las copias de los documentos siguientes: una copia certificada de la es-critura de testamento abierto, la certificación del Registro de Testamentos emitida por la directora de la Oficina de Inspección de Notarías, un certificado de cancelación del gravamen expedido por el Departamento de Hacienda, cer-tificados de defunción de la causante así como de sus her-manos y certificados de nacimiento de los hijos de los her-manos de la causante, así como los derechos de inscripción correspondientes.
El 12 de marzo de 2007, el Registrador de la Propiedad notificó que la instancia registral adolecía de varias faltas que impedían su registración. Específicamente, el Regis-trador informó lo siguiente:
En la Instancia Registral no comparecen los albaceas o uno de ellos, falta presentar las Cartas Testamentarias para autori-zar a los albaceas testamentarios para solicitar y tramitar la inscripción de los herederos. ... Véase [sic] Sección 2361-2575 del Título 32 (Código de Enjuiciamiento Civil) de Leyes de Puerto Rico anotadas.
En su defecto, si ellos pre-murieron al testador, como es el caso, favor de solicitar la designación de herederos a través del Tribunal. Véase [sic] Sección 2,301-Supra. Artículos 38, 42, 43 y 68 de la Ley Hipotecaria de Puerto Rico. Apéndice del Re-curso gubernativo, pág. 24.
Los herederos sustitutos, a través de su representación legal, presentaron el 19 de marzo de 2007 una solicitud de recalificación. En ella adujeron que las disposiciones lega-les invocadas por el Registrador de la Propiedad eran inaplicables. Señalaron, además, con respecto a la primera falta notificada, que habiendo fallecido los albaceas testa-mentarios cualquiera de los herederos sustitutos, como persona interesada, podía solicitar la inscripción de los bie-nes hereditarios. A su vez, indicaron que las disposiciones sobre la administración judicial consideradas en el Código de Enjuiciamiento Civil, e invocadas por el Registrador, no aplicaban en este caso. Argüyeron que lo solicitado por el *782 Registrador de la Propiedad era la inscripción en el Regis-tro de la Propiedad de los derechos hereditarios, lo que no constituía un acto de administración de la herencia, por lo que era improcedente invocar las disposiciones del Código de Enjuiciamiento Civil. Finalmente, adujeron que era im-propio exigirles que instaran un procedimiento judicial para procurar una declaratoria de herederos, habida cuenta que la testadora había establecido en su testamento una sustitución de herederos, previendo que los herederos instituidos en el testamento le premuriesen.
El 29 de junio de 2007, el Registrador de la Propiedad emitió su calificación final, denegando la inscripción de la Instancia registral solicitada, según los mismos fundamen-tos invocados previamente.
El 19 de julio, los herederos sustitutos de doña Margarita Collazo Félix presentaron un recurso gubernativo ante este Tribunal. Posteriormente, el Registrador de la Propie-dad presentó su correspondiente contestación al recurso. En este último escrito, el Registrador abundó en sus fun-damentos para denegar la inscripción en el Registro de la Propiedad. De entrada, el Registrador señaló que está fa-cultado para solicitar documentos complementarios cuando del propio documento pendiente de inscripción surge “causa para creer que pueda ser inválido ... [y e]n el caso de autos, los documentos presentados no reflejaban su entera validez para convertirse en una inscripción registral”.
El Registrador de la Propiedad adujo que la “designación de herederos en el caso de autos no e[ra] precisa”, pues aun cuando en el testamento se indicaba que, de premorir los hermanos de la testadora —quienes como vimos eran sus herederos universales— les sustituirían los hijos de éstos, no se indicó “quiénes son los hijos de sus hermanos, los nom-bres de quien viene a heredar”. Para esta proposición se invocó el Art. 701 del Código Civil, 31 L.P.R.A. see. 2290, donde se dispone cómo se designa al heredero. En vista de lo *783 anterior, el Registrador de la Propiedad concluyó que se de-bía acudir a una “acción judicial para que el Tribunal de Primera Instancia correspondiente, determine los nombres y apellidos correspondientes a los herederos que sustituyen a los premuertos nombrados en el Testamento Abierto y Re-vocación del testamento, objetos del caso de epígrafe, ya que nos se cumple la finalidad de la Ley, con una Instancia ju-ramentada por una de los mismos herederos que sustituye.”
Trabada así la controversia, procede que pasemos a resolverla.
II
La discusión ante nuestra consideración gira en torno a la inscripción en el Registro de la Propiedad del derecho hereditario y cómo se procede con ésta. En rigor, debemos comenzar con una exposición breve sobre la naturaleza y objeto del derecho hereditario, previo a determinar cómo logra el acceso al Registro de la Propiedad. Nos corres-ponde también expresarnos en torno a la figura de la sus-titución hereditaria, pues, como veremos, los peticionarios advienen herederos de la causante, mediante una cláusula testamentaria de esta naturaleza. Veamos entonces.
Suceder, en su sentido jurídico, significa que una persona se coloca en la posición de otra, asumiendo todos sus bienes, derechos y obligaciones, con excepción de aquellos que sean personalísimos y, consecuentemente, no susceptible de ser transferidos. En la sucesión mortis causa entonces, se suscita el desplazamiento en las relaciones jurídicas detentadas por el causante sobre sus bienes, derechos y obligaciones transferibles. Véase Kogan v. Registrador, 125 D.P.R. 636 (1990). Véase, además, E. González Tejera, Derecho Sucesorio Puertorriqueño, San Juan, Ed. Ramallo, 1983, Vol. II.
La herencia, desde el punto de vista objetivo, es el conjunto de los bienes y las relaciones patrimoniales que *784 son objeto de la sucesión. El heredero, a su vez, es la persona designada por el testador —en su testamento— para sucederle a título universal en la totalidad o en una parte alícuota, en esos bienes y relaciones patrimoniales transmisibles. González Tejera, op. cit., pág. 343.
Cuando existe una pluralidad de herederos que han aceptado la herencia, se forma entre ellos una comunidad que no termina hasta que se proceda con la partición y adjudicación del patrimonio del causante común. Hasta tanto no se lleven a cabo las operaciones particionales, “ningún heredero tiene título específico alguno sobre ninguna parte de la herencia en forma tal que pueda disponer de la misma libremente”. L. Mojica Sandoz, Derecho Hipotecario de Puerto Rico, San Juan, Pubs. J.T.S., 2004, pág. 129. Véase, además, Burgos v. Hernández, 54 D.P.R. 37 (1938).
La participación en esta comunidad le confiere a cada uno de los coherederos el llamado “derecho hereditario” en abstracto. J.A. Cuevas Segarra y A. Ramón García, Derecho sucesorio comparado: Puerto Rico y España, San Juan, Pubs. J.T.S., 2003, pág. 133. Por derecho hereditario, entonces, ha de entenderse la situación en que se encuentra el patrimonio relicto del causante, considerado éste como una unidad que “pertenece indivisa y sintéticamente a una pluralidad de herederos que han aceptado la herencia”. L. Roca-Sastre Muncunill, Derecho de Sucesiones, Barcelona, Ed. Bosch, 2000, Vol. IV, pág. 7. En igual sentido, véase L. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 2da ed., San Juan, Eds. Jurídicas, 2002, pág. 427. Es decir, el denominado “derecho hereditario” tiene lugar cuando los herederos son varios y están en comunidad, y se extiende hasta que se realice la partición. Se trata, por lo tanto, “de una comunidad incidental o transitoria”. Roca-Sastre Muncunill, op. cit., pág. 25.
Naturalmente, entonces, lo que ingresa al patrimonio de cada heredero es el derecho abstracto y no cada bien, *785 derecho u obligación individualizada. Kogan v. Registra-dor, supra. Véase, además, Narváez v. Registrador, 156 D.P.R. 1 (2002). Así, mientras la herencia se mantiene en estado de indivisión, “los interesados tienen una cuota en abstracto, un derecho en el conjunto hereditario”. Rivera Rivera, op. cit., pág. 427.
Justamente, debido a esta especial índole del derecho hereditario, su acceso al Registro de la Propiedad ha gene-rado amplia controversia en la doctrina. Véanse: M. Albaladejo Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Rev. Der. Privado, 2000, T. VII, Vol. 5, págs. 299-329; Roca-Sastre Muncunill, op. cit., págs. 10-19.
Habiendo aclarado ya cuáles son los contornos de la fi-gura del derecho hereditario, corresponde que evaluemos cómo logra acceso al Registro de la Propiedad.
III
A. Como sabemos, las inscripciones regístrales publican el dominio concreto sobre fincas o derechos reales sobre éstas, constatado por el hecho de que el Registro de la Pro-piedad se lleva por fincas y no por patrimonios ni personas. L. Rodríguez Otero, Elementos de Derecho Hipotecario, Madrid, Ed. Dijusa, 2005, Vol. I, pág. 272; J.M. Chico y Ortiz, Estudios sobre Derecho Hipotecario, 3ra ed., Madrid, Ed. Marcial Pons, 1994, Vol. II. Por el contrario, y como ya expresamos, el derecho hereditario recae en abstracto sobre la masa hereditaria sin particular adjudicación a los here-deros de bienes singulares o concretos, o de cuotas o partes indivisas de éstos. Ni la masa relicta ni la cuota de los herederos pueden ser englobadas en el concepto finca. Como sabemos, la masa hereditaria está compuesta de fin-cas, derechos reales, muebles, créditos, valores, títulos etc., lo que imposibilita “arrastrar al régimen de una de sus partes la transferencia de la totalidad”. Albaladejo, op. cit., pág. 300. No será, claro está, sino con la partición posterior *786 y adjudicación que el derecho hereditario se concreta sobre bienes determinados.
Estas peculiaridades del derecho hereditario ponen de relieve las dificultades regístrales que supone su inscrip-ción en el Registro de la Propiedad. Los principios funda-mentales del derecho inmobiliario registral, por ejemplo: la fe pública registral, el principio de especialidad o de publi-cidad, no se adaptan a la naturaleza y objeto del derecho hereditario. Véase Chico y Ortiz, op. cit., pág. 1159; J. Gon-zález Martínez, Estudios de derecho hipotecario y derecho civil, Madrid, 1948, T. 1, pág. 183, citado en M. Albaladejo, op. cit, págs. 303-304. Con lo cual, los efectos de la inscrip-ción del derecho hipotecario “quedan limitados a garanti-zar que la finca o derecho en cuyo folio se extiende forma parte de patrimonio adquirido por ciertas personas al fa-llecer el titular”. J. González Martínez, op. cit., pág. 183, citado en Albaladejo, op. cit., págs. 303-304.
No empece estas dificultades doctrinales, tanto en Es-paña como en Puerto Rico se reconoció desde el comienzo del sistema registral la necesidad de dar acceso al derecho hereditario mediante un asiento de inscripción. Mojica Sandoz, op. cit., pág. 55. Véase, además, Albaladejo y Díaz Alabart, op. cit. En 1944, con la reforma hipotecaria espa-ñola, se modificó la constancia registral del derecho here-ditario español proveyendo para que éste accediera única-mente al Registro de la Propiedad por anotación preventiva. Roca Sastre indica que la razón primordial para el cambio fue una de naturaleza práctica, a saber, “acabar con el equívoco de que se entendiera que la inscrip-ción del derecho hereditario implicaba la inscripción de una comunidad por cuotas sobre cada finca o derecho inscrito integrante de la correspondiente sucesión y procurar que, mediante la anotación preventiva, o sea, por la circunstan-cia misma de figurar tan sólo anotado el derecho heredita-rios, resalte, en adelante, una saludable advertencia para los terceros, que les haga pensar que no se trata del registro *787 de un derecho normal, sino de algo especial.” (Énfasis en el original.) R. Roca Sastre y L. Roca-Sastre Muncunill, Derecho Hipotecario, 8va ed., Barcelona, Ed. Bosch, 1997, Vol. VI, pág. 480.
En Puerto Rico, sin embargo, el derecho hereditario accesa al Registro de la Propiedad mediante asiento de inscripción. Ello no detracta, no obstante, de la naturaleza y objeto singular de esta figura y de las dificultades registraíes que conlleva su acceso al Registro. Su inscripción mediante un asiento registral obedece a la necesidad de mantener constante el paralelismo entre los libros del Registro de la Propiedad y la realidad jurídica. Así, como dice Cossío y Corral, “todas las modificaciones que, en cuanto a titularidad de las fincas supone la sucesión ‘mortis causa’ y todos los derechos y responsabilidades que frente a los bienes hereditarios pueden corresponder a las personas interesadas en la sucesión” encuentran, reflejo “en las hojas regístrales”. A. Cossío y Corral, Instituciones de Derecho Hipotecario, 2da ed., Barcelona, Ed. Bosch, 1956, pág. 289.
En nuestra jurisdicción, la inscripción del derecho here-ditario tiene su propia sustantividad habida cuenta que el Art. 58 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. see. 2261,(2) claramente dispone que no se podrá inscribir el derecho transferido por un heredero sin que apa-rezca ya inscrito el derecho hereditario a su favor. Véase Mojica Sandoz, op. cit., pág. 57. Podemos concluir, entonces, que la inscripción del derecho hereditario en nuestro orde-namiento facilita y allana el camino para la entrada al Re-gistro de la Propiedad de la partición hereditaria.
*788 El Art. 95 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. see. 2361, contiene las reglas para la inscripción del derecho hereditario. Véase, además, Sec. 50.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. see. 870.198 (ed. especial 2006). El Art. 95 dispone, citamos en lo pertinente:
El documento de la sucesión hereditaria, a los efectos del Registro, es aquel que contiene el testamento o la declaración de herederos abintestados ....
Se inscribirá el derecho hereditario a favor de todos los que resultaren herederos, cuando se tratase de bienes adquiridos por herencia y no se haya hecho todavía la correspondiente parti-ción, si lo solicita alguno de los interesados', expresándose en el asiento la parte que a cada uno de ellos corresponda y el dere-cho a la cuota usufructuaria del cónyuge supérstite, si la hu-biere ....
En los casos a que se refieren los dos párrafos anteriores, si en los documentos presentados no aparecieren descritos los bie-nes, se acompañará un escrito firmado por cualquier parte in-teresada en el que se describan los bienes y se indiquen los números que las fincas tengan en el Registro, con expresión del tomo y folio en que estuvieren inscritas a favor del causante.
Para inscribir adjudicaciones concretas, deberán determi-narse en escritura pública o por resolución judicial firme, los bienes o partes indivisas de los mismos que correspondan o se adjudiquen a cada titular o heredero, o también escritura pú-blica a la cual hayan prestado su consentimientos todos los interesados, si se adjudicare solamente una parte del caudal y aquéllos tuvieren la libre disposición del mismo.
No se inscribirán enajenaciones o gravámenes de cuotas es-pecíficas en una finca que no se haya adjudicado antes en la correspondiente partición. (Enfasis nuestro.) 30 L.P.R.A. see. 2316.
En Rosado Collazo v. Registrador, 118 D.PR. 577, 583 (1987), indicamos que tanto el testamento como el certificado de defunción, son documentos esenciales para la inscripción del derecho hereditario. El profesor Rivera Rivera, op. cit, pág. 429, nos señala sobre este particular que “el título inscribible es el testamento, que deberá estar acompañado del certificado de defunción del testador para *789 que se pueda hacer constar su fecha de fallecimiento. En este último caso hay que acompañar una certificación del Registro de Testamentos acreditativa de que el testamento no ha sido revocado o modificado. Siempre será necesario acompañar la certificación sobre cancelación de gravamen de contribución sobre la herencia del Departamento de Hacienda.”
Conforme se desprende del Art. 95 transcrito, los herederos, cualquiera de ellos, u otra parte interesada, podrán solicitar la inscripción del derecho hereditario directamente al Registrador de la Propiedad. Para ello, sólo se necesita que la parte que solicita la inscripción acredite su interés en la herencia o acredite su calidad de heredero. En los casos de sucesión testada, el testamento es el documento que atestigua el carácter de heredero. Rivera Rivera, op. cit.
Adviértase que para efectuar este trámite de carácter transitorio no se requiere, necesariamente, la comparecen-cia del albacea o que se esté inmerso en el procedimiento judicial de administración de la herencia que regula el Có-digo de Enjuiciamiento Civil. La ley hipotecaria específica-mente autoriza a los herederos colectiva o individual-mente, a solicitar del Registrador de la Propiedad la inscripción del derecho hereditario.
Pasemos ahora a discutir la figura de la sustitución he-reditaria, pues los peticionarios en este caso adquirieron la condición de herederos por virtud de esta figura conforme se desprende de la cláusula de designación de herederos.
IV
El heredero, como se indicó, es el sucesor a quien se le atribuye la totalidad de las relaciones patrimoniales del difunto o una parte alícuota de éstos. Fernández v. Fernández, 152 D.P.R. 22 (2000). La sustitución hereditaria es aquella disposición de última voluntad, mediante la cual alguien es llamado a heredar en defecto de una primera *790 persona llamada, o después de ella. Art. 703 del Código Civil, 31 L.P.R.A. see. 2301.(3) Véase, además, González Tejera, op. cit.; J. Fuentes Martínez, La sucesión y la institución hereditaria, en J.F. Delgado de Miguel Instituciones de Derecho Privado, Madrid, Ed. Thomson Civitas, 2004, Vol. 5, T. 1, pág. 253; M. Medina de Lemus, Derecho Civil, Madrid, Ed. Dilex, Cap. 8.
Existen varios tipos de sustituciones hereditarias. En Puerto Rico reconocemos principalmente tres, a saber: la vulgar u ordinaria, la fideicomisaria y la pupilar.(4) González Tejera, op. cit., pág. 609. La primera, la sustitución vulgar u ordinaria, es la que nos ocupa aquí.
Por sustitución vulgar se entiende como aquella por la que dos o más personas son llamadas a la herencia o al legado, no para que sean herederos o legatarios conjunta-mente, sino para que unos lo sean y otros los suplan si llegan a faltar los primeros. Véase Cuevas Segarra y Ro-mán García, op. cit, Sec. 6.1[1]. El profesor Fuentes Mar-tínez, op. cit, pág. 253, la describe de la manera siguiente: “es una sustitución subsidiaria o defectiva, pues el cau-sante quiere que sólo sea eficaz uno de los nombramientos y para ello, además del llamado con carácter preferente, hace uno o varios llamamientos eventuales.” (5) Es, a fin de cuentas, una institución de heredero sujeta a condición. “[L]a condición consiste en que no se reproduzca un evento *791 futuro e incierto es decir, que el instituido no llegue a adir la herencia.” González Tejera, op. cit., pág. 614.(6) Igual cri-terio expresa Albaladejo, cuando indica: “Siendo la sustitu-ción una institución condicional, sus efectos, si la condición se cumple, son los de la institución de heredero.” M. Alba-ladejo, Sustituciones Hereditarias, Oviedo, Ed. Gráficas Summa, 1956, pág. 81. Frustrado el primer llamamiento, el sustituto recibe el llamamiento para que disfrute de los bienes, recibiéndolos directamente del testador, no del instituido. En otras palabras, “el sustituto nunca es lla-mado —nunca recibe delación— como sustituto, sino como instituido”. (Énfasis en original.) Albaladejo, op. cit., pág. 49.
En tal tenor, en Huelva v. Clivillés et al., 24 D.P.R. 373, 378 (1916), indicamos que la sustitución vulgar opera cuando “el heredero instituido no llegue a serlo, bien por su fallecimiento antes que el testador, bien porque no quiera aceptar la herencia, bien porque no pueda aceptarla”. Véanse, además: Fernández Franco v. Castro Cardoso, 119 D.P.R. 154 (1987); Calimano Díaz v. Calimano, 103 D.P.R. 123 (1974); Junghanns Rivera v. Cornell University, 71 D.P.R. 673 (1950). El Código Civil no exige, como ocurre con la sustitución fideicomisaria, “que la sustitución vulgar deba ser siempre expresa; sin embargo, deberá deducirse inequívocamente del contenido de la cláusula testa-mentarias”. Cuevas Segarra y Román García, op. cit., págs. 225-226.
Su finalidad no es otra que evitar la apertura de la su-cesión intestada. Martínez Fuentes, op. cit. Véase, además, Medina de Lemus, op. cit. El profesor Roca-Sastre Muncu-nill, op. cit., pág. 458, nos advierte que esta figura, propia del derecho romano, persigue como finalidad primordial *792 evitar la sucesión intestada “por razón del principio ro-mano del favor testamenti, siguiendo un dispositivo de pre-visión, atendida la enemiga que había respecto a la ciega y automática sucesión legal”. (Énfasis en el original.)
Debemos, entonces, proceder a aplicar la normativa re-señada al asunto ante nuestra consideración.
V
No hay duda de que, en su testamento, la causante ins-tituyó a sus hermanos como sus herederos y, en caso de premoriencia, a los hijos de éstos como herederos sustitutos. Es decir, la testadora estableció en su testa-mento un llamamiento subsidiario que, por su naturaleza, se ubica claramente en la figura que conocemos como la sustitución ordinaria o vulgar. La causante también insti-tuyó a sus hermanos como albaceas testamentarios.
Habiendo premuerto a la causante sus tres hermanos, los hijos de estos últimos, por disposición expresa de la sustitución ordinaria establecida en el testamento, pasa-ron a ser los herederos universales de la causante, reci-biendo dicho llamamiento directamente de la testadora. Por otro lado, con el óbito de los hermanos de la causante, la disposición testamentaria sobre albaceazgo se tornó inoficiosa. 31 L.P.R.A. see. 2517.
Los sobrinos de doña Margarita, al ser sus herederos, podían solicitar, conforme el Art. 95 de la Ley Hipotecaria y del Registro de la Propiedad, supra, y el Art. 50.1 del Regla-mento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad que se inscribiera en el Registro de la Propiedad el derecho hereditario que sobre los bienes de la causante ostentaban. Solicitud que podían hacer individual o colectivamente, y directamente al Registrador de la Propiedad. No era necesario para ello procurar la adminis-tración de la herencia, como parece intimar el Registrador de la Propiedad al hacer especial referencia en su denegato- *793 ría de inscripción a las disposiciones sobre la administración judicial de los bienes del finado estatuidas en el Código de Enjuiciamiento Civil.
De otra parte, el Registrador de la Propiedad entiende que la designación de heredero “no es precisa, pues indica que en caso de que sus hermanos premueran se designa a los hijos de tal heredero (hermano), excepto una hermana que no tiene hijos y en tal caso que ella (hermana) pre-muera, designa a los hijos de su hermano, Rodolfo; sin que se indiquen quiénes son los hijos de sus hermanos”. (Enfa-sis nuestro.) Esta conclusión se fundamenta, a juicio del Registrador de la Propiedad, en el mandato contenido en el Art. 701 del Código Civil, 31 L.P.R.A. see. 2290.(7) Este ar-ticulado dispone en su primer párrafo que el testador de-signará al heredero “por su nombre y apellidos”. En su con-secuencia y ante la presunta falta de precisión en la designación de herederos, se concluyó que se requería una designación judicial de herederos para proceder con la ins-cripción del derecho hereditario. No tiene razón el Regis-trador de la Propiedad.
El Art. 701 del Código Civil describe la forma como se designa al heredero, y es correcto que en la primera parte del artículo se indica que el heredero debe ser designado por su nombre y apellidos. Esta es la forma natural de designar a una persona. No es, sin embargo, la única forma. El propio artículo dispone, en su segundo párrafo, que aun cuando “el testador haya omitido el nombre del heredero, si lo designare de modo que no pueda dudarse quién sea el instituido, valdrá la institución”. íd. Con lo cual, podemos concluir que el artículo no exige una formali-dad especial, bastará con que la designación se refiera a una *794 persona determinada o determinable. Lo importante, evi-dentemente, es que el favorecido sea inequívocamente determinable, que se conozca con seguridad la voluntad a res-pecto del causante; que no pueda dudarse quién es el instituido. La individualización con nombre y apellidos “no es esencial pues cabe la designación por circunstancias, como seudónimos, apodos, relación de parentesco o familiar, doméstica, profesional, asociativa etc.”. Roca-Sastre Muncu-nill, op. cit, T. I, pág. 338.
En este caso, la causante identificó a los herederos susti-tutos por su relación de parentesco al decir que eran los hijos de sus hermanos. Esta forma de designación es sufi-ciente y no adolece de imprecisión, como nos indicó el Regis-trador de la Propiedad. Con esta descripción no cabe duda de a quién la causante interesó designar como herederos sustitutos. Corresponde, entonces, hacer valer esa última voluntad. Recordemos, como habíamos señalado, que el Có-digo Civil no exige una forma particular para la designación de un heredero. No es necesario entonces acudir al proceso judicial de declaratoria de herederos.
Sobre este asunto, J. Morell y Terry, en Comentarios a la Legislación Hipotecaria, 2da ed., Madrid, Ed. Reus, 1927, T. 2, pág. 537, indica precisamente: que “es relativamente frecuente el caso de instituir el testador por sus herederos a los hijos que tiene y a los demás que pudiera tener, o a los hijos de un determinado hermano, sin designar sus nombres. Es evidente que en tales casos existe institución de herederos, y que, por consiguiente, no necesitan para ob-tener el carácter de tales la declaración judicial, puesto que, conforme a lo dispuesto en el párrafo segundo del artículo 772 del Código [Art. 701 del Código Civil de Puerto Rico] la institución es válida aunque el testador omita el nombre del heredero, si lo designa de modo que no pueda dudarse quién sea el instituido”.
En estos casos, para acreditar la calidad de hijos no ha-biendo sido designado éstos por nombre, “basta presentar *795 las partidas correspondientes de nacimiento ... [según] las actas del Registro”. Morell y Terry, op. cit., pág. 537. Como sabemos, el certificado de nacimiento refleja “los datos vi-tales de la persona al momento de su nacimiento”. Delgado, Ex parte, 164 D.RR. 170 (2005). Dejando constancia de la siguiente información: fecha y lugar de nacimiento, nombre de los padres, nombre y sexo de la persona inscrita. En innumerables ocasiones hemos indicando que “la información que consta en el Registro Demográfico constituye evidencia prima facie del hecho que se pretende constatar”. Delgado, Ex parte, supra, pág. 187, y casos allí citados.
Adviértase que el Registro Civil —precursor del Regis-tro Demográfico— es una institución “a cuyo cargo se halla la publicidad de los hechos afectantes al estado civil de las personas o mediatamente relacionados con dicho estado, contribuyendo, en ciertos casos, a la constitución de tales actos y proporcionando títulos de legitimación de estado”. L. Puig Ferriol, Manual de Derecho Civil, Madrid, Ed. Marcial Pons, 1997, Vbl. 1, pág. 136. Su propósito fundamental es “garantizar una información fiable sobre la con-dición civil y hechos vitales de las personas y proporcionar un medio de prueba para éstos”. Delgado, Ex parte, supra, pág. 185. Por lo tanto, el certificado de nacimiento de los hijos de los hermanos de la causante era prueba suficiente de ese hecho vital.
Lo cierto es que el Registrador no puede exigir “que se justifique que no existen otros herederos más que los que se presentan como tales”. Morell y Terry, op. cit., pág. 537. Ni el Código Civil, ni la Ley Hipotecaria y del Registro de la Propiedad ni alguna otra legislación especial, exigen que las personas instituidas como herederos en un testamento deban acreditar, para poder adquirir los derechos corres-pondientes, que no existan otros que tengan esta cualidad. Véase: Resoluciones de la Dirección General de Registros y Notariado de, 2 de diciembre de 1897, 11 de mayo de 1900, *796 26 de junio de 1901, 3 de marzo de 1912, según reseñadas en A. Coello Gallardo, Sucesiones, Madrid, Ed. Reus, 1952, T. I, págs. 563-571.
En el caso que nos ocupa, se anejaron a la instancia presentada al Registro de la Propiedad los documentos si-guientes: una copia certificada de la escritura del testa-mento abierto, una certificación del Registro de Testamen-tos emitida por la directora de la Oficina de Inspección de Notarías, un certificado de cancelación del gravamen expe-dido por el Departamento de Hacienda, los certificados de defunción de la causante, así como de sus hermanos y cer-tificados de nacimientos de los hijos de los hermanos de la causante, así como los correspondientes derechos de inscripción. Resolvemos que estos documentos eran sufi-cientes para proceder con la inscripción del derecho here-ditario de los herederos de doña Margarita Collazo Félix. (8)
Recapitulando, los hermanos de la testadora le premu-rieron y copias de sus respectivos certificados de defunción se anejaron a la instancia registral. Con lo cual, los hijos de éstos pasaron a ser los llamados a la herencia. El certifi-cado de nacimiento de éstos, anejados a la instancia pre-sentada, es a su vez suficiente para determinar su calidad de hijos de los hermanos de la testadora y en virtud de la disposición de sustitución hereditaria, herederos de doña Margarita. Ello es suficiente para proceder con la inscrip-ción del derecho hereditario en este caso.
Por los fundamentos previamente reseñados, procede re-vocar la calificación de denegatoria final notificada por el Registrador de la Propiedad. Se devuelve el recurso al Re-gistro de la Propiedad, Sección Primera de Caguas, para que se proceda conforme con lo aquí resuelto.
El Juez Asociado Señor Rivera Pérez no intervino.

 La segunda cláusula del testamento abierto otorgado por la Sra. Margarita Collazo Félix dispone:
“Segundo: El Testador instituye como sus únicos y universales herederos a Rodolfo, Mercedes y Luis Gilberto Collazo Félix, sus tres hermanos; indicando que si alguno le premuere, que la porción designada para dicho heredero sea para los hijos de tal heredero, excepto en el caso de Mercedes, quien no tiene hijos y en caso de que ésta le premuera, la porción designada para ella sea para los hijos de su hermano Rodolfo Collazo Félix.” Apéndice del Recurso gubernativo, pág. 6.

 El Art. 58 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. see. 2161, dispone lo siguiente:
“Los herederos y legatarios no podrán inscribir a su favor bienes inmuebles o derechos reales sin que hubiesen inscrito previamente o soliciten a la vez la inscrip-ción del título de sus causantes.
“No se inscribirá el documento de partición de bienes hereditarios o de transfe-rencia o gravamen del derecho hereditario si antes no apareciere previamente ins-crito el derecho hereditario a nombre de los herederos.”

 El Art. 703 del Código Civil, 31 L.P.R.A. see. 2301, dispone lo siguiente: “Puede el testador substituir una o más personas al heredero o herederos ins-tituidos para el caso en que mueran antes que él, o no quieran, o no puedan aceptar la herencia.”

 Se postula, no obstante, que sólo en las primeras dos instancias existe una verdadera sustitución de un heredero por otro llamado subsidiariamente. Ello es así, pues en la pupilar no es el heredero el que se sustituye, sino el causante por no poder testar válidamente y viene a hacerlo por él un ascendiente. Véase M. Medina de Lemus, Derecho Civil, Madrid, Ed. Dilex, pág. 177.

 Igualmente, el profesor Roca-Sastre Muncunill define esta institución: “La sustitución vulgar es la disposición testamentaria en virtud de la cual el testador nombra un segundo o ulterior heredero para el caso o en previsión de que el anterior heredero instituido no llegue efectivamente a serlo (si heres non erit) por no poder o no querer.:” (Énfasis en el original.) L. Roca-Sastre Muncunill, Derecho de Sucesiones, Barcelona, Ed. Bosch, 1995, Vol. I, pág. 457.

 No obstante, R.M. Roca Sastre, Anotaciones a Enneccerus-Kipp, 1951, Vol. 1, pág. 208, rechaza el criterio de que la sustitución vulgar implique una institución sujeta a la condición suspensiva si heres no erit, concluyendo que tal sustitución es una previsión sucesoria del testador semejante a la que la ley adopta en los llama-mientos sucesivos del ordenamiento legal intestado.

 El Art. 701 del Código Civil, 31 L.P.R.A. see. 2290, dispone lo siguiente:
“El testador designará al heredero por su nombre y apellido; cuando haya dos que los tengan iguales, deberá señalar alguna circunstancia por la que se conozca al instituido.
“Aunque el testador haya omitido el nombre del heredero, si lo designare de modo que no pueda dudarse quién sea el instituido, valdrá la institución.”

 Esto supone, claro está, que el testamento en cuestión no adolece de ningún defecto que lo invalide.