EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rosa María Vicioso Tueros de Suárez<br><br>Peticionaria<br><br>v.<br><br>Margarita Odette Suárez Noya y otros<br><br>Recurridos | Certiorari<br><br>2026 TSPR 8<br><br>217 DPR ___ |

Número del Caso: CC-2024-0802

Fecha: 27 de enero de 2026

Tribunal de Apelaciones

    Panel Especial

Representantes legales de la parte peticionaria:

    Lcdo. Luis A. Oliver Fraticelli
    Lcdo. Francisco Ríos Rivera
    Lcda. Xiomarie Nieves Miranda

Representante legal de la parte recurrida:

    Lcda. María D. Bertólez Elvira

Materia: Derecho de Sucesiones - Los herederos no pueden escoger la renta vitalicia como la forma de satisfacer el usufructo viudal del cónyuge supérstite cuando el testador dispuso que la cuota se conmutaría mediante el pago en efectivo; si las acciones que componen el caudal hereditario deben valorizarse conforme a su valor en los libros corporativos o su valor en el mercado al realizar el avalúo del usufructo viudal.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rosa María Vicioso Tueros de Suárez<br><br>Peticionaria<br><br>v.<br><br>Margarita Odette Suárez Noya y otros<br><br>Recurridos | CC-2024-0802 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 27 de enero de 2026.

En esta ocasión, tenemos la oportunidad de resolver si las personas herederas de un causante pueden escoger la renta vitalicia como la forma de satisfacer el usufructo viudal de una cónyuge supérstite cuando el testador dispuso el pago en efectivo como la forma en que se conmutaría la cuota.

Al igual, debemos pautar, por primera vez en el contexto de la realización del avalúo del usufructo viudal, si se deben valorizar ciertas acciones corporativas habidas en el caudal relicto según su valor en los libros corporativos o su valor en el mercado.

Adelantamos que hoy este Tribunal resuelve que el testador válidamente escogió el pago en efectivo como la manera de satisfacer la legítima de la cónyuge supérstite y,

a su vez, que el valor de las acciones corporativas incluidas en el caudal relicto deberá reflejar el valor en el mercado de estas. Veamos.

I

El presente recurso tuvo su génesis el 21 de abril de 2017 cuando la Sra. Rosa María Vicioso Tueros de Suárez (señora Vicioso Tueros o peticionaria) presentó una *Demanda* sobre partición de herencia, pago de legado, conmutación y pago de cuota viudal en contra de los miembros de la Sucesión del Sr. Vicente Suárez Sánchez[1] (Sucesión o parte recurrida) y su albacea, el Sr. Diego Suárez Matienzo (albacea).[2] Según expuso en la reclamación, el Sr. Vicente Suárez Sánchez (señor Suárez Sánchez o causante), esposo de la peticionaria, falleció el 27 de enero de 2016 y dejó un *Testamento abierto*, que se otorgó el 1 de abril de 2015 mediante la Escritura Número 1 ante el notario Horacio R. Subirá, Hijo. En virtud de este, solicitó que se ordenara el pago a favor de la señora Vicioso Tueros de un adelanto de cinco millones de dólares ($5,000,000.00) (en lo subsiguiente, $5,000,000.00 o adelanto) en efectivo, más los intereses correspondientes, y que se computara el usufructo viudal según el valor en el mercado de la participación del

---

[1] La Sucesión la componen las dos (2) hijas, la Sra. Margarita Odette Suárez Noya y la Sra. Margarita Eugenia Suárez Noya, y los seis (6) nietos del causante, el Sr. Raúl Vicente Marcial Suárez, el Sr. Jorge Armando Marcial Suárez, el Sr. José Manuel Marcial Suárez, la Sra. Margarita Eugenia González Suárez, la Sra. Margarita Odette González Suárez y el Sr. Jaime Fernando González Suárez.

[2] Apéndice del *Alegato* de la peticionaria, págs. 28-57.

caudal en ciertas empresas del Grupo V. Suárez. Ese petitorio se basó en la cláusula F del párrafo Tercero del *Testamento abierto*, la cual dispuso:

> (F) Si mi actual esposa Rosa María me sobrevive dispongo respecto al usufructo viudal lo siguiente:
>
> (i) Que se le entregue la cantidad de Cinco Millones de Dólares ($5,000,000.00) en moneda legal de los Estados Unidos de América y que se lleve a cabo lo antes posible. Se podrán vender valores en mi cartera de inversiones para este propósito.
>
> (ii) Que se lleve a cabo lo antes posible el avalúo de la cuota viudal usufructuaria sobre mis bienes relictos.
>
> (iii) Que de resultar el avalúo en más de Cinco Millones de Dólares ($5,000,000.00) en moneda legal de los Estados Unidos de América, que se le entregue la diferencia en efectivo en moneda legal de los Estados Unidos de América.
>
> (iv) Que de resultar el avalúo en menos de Cinco Millones de Dólares ($5,000,000.00) en moneda legal de los Estados Unidos de América, se considere la diferencia entre el avalúo y los Cinco Millones de Dólares ($5,000,000.00) en moneda legal de los Estados Unidos de América, como un legado, de manera que Rosa María, reciba de mi caudal relicto no menos de Cinco Millones de Dólares ($5,000,000.00) en moneda legal de los Estados Unidos de América, y que reciba dicha suma en efectivo.
>
> (v) Dispongo además que como parte del usufructo viudal, mi esposa Rosa María tendrá el usufructo hasta que ella fallezca, del Apartamento Número Diez (10), el cual es mi residencia […] en Santurce, Puerto Rico. Mientras ella disfrute del usufructo del apartamento, deberá pagar todos los gastos relacionados con el mismo incluyendo pero sin limitarse a mantenimiento, derramas, las cuotas de mantenimiento del condominio, servicios de agua, electricidad, luz[,] teléfono y servicios electrónicos.
>
> Quiero ser claro e inequívoco que es mi voluntad que bajo ninguna circunstancia recibirá Rosa María acciones o participaciones patrimoniales en cualquiera de las empresas que constituyen el grupo familiar V. Suárez, ni de

> otros, valores, acciones o inmuebles que yo poseyera al momento de mi fallecimiento.[3]

La peticionaria sostuvo, además, que el avalúo de la cuota viudal arrojaría un valor superior a dieciséis millones de dólares ($16,000,000.00).

El 5 de julio de 2017, el albacea presentó una *Contestación a demanda*.[4] En ella, en lo pertinente, admitió que, por razones ajenas a su labor, la señora Vicioso Tueros no había recibido el pago dispuesto en el testamento.[5] Por una parte, alegó que, antes de realizarse cualquier pago a la peticionaria, procedía determinar si el causante realizó donaciones nulas a favor de ella o de sus hijos. Por otra, argumentó que para calcular el usufructo viudal no se requería tasar el valor en el mercado de las acciones que forman parte del caudal, sino analizar el rendimiento promedio anual de sus activos. En todo caso, propuso que, si hiciera falta, correspondía computar el valor de las acciones según su valor en los libros de forma que se cumpliera la voluntad del señor Suárez Sánchez.

Al día siguiente, la Sucesión hizo lo propio mediante una *Contestación a demanda, reconvención y solicitud de sentencia declaratoria* en la que, en lo relacionado al presente recurso, rechazó que el pago de los $5,000,000.00 constituyera un legado y, en cambio, arguyó que esa cantidad

---

[3] Íd., págs. 54-55.

[4] Íd., págs. 58-84.

[5] Íd., págs. 62-63, 76-77 y 81.

fue el total que el causante determinó que la señora Vicioso Tueros recibiría por concepto de usufructo viudal por el resto de su vida.[6] También, planteó que el valor de las acciones era irrelevante porque la peticionaria no era propietaria de estas ni podía serlo debido a una prohibición incluida a esos fines en el *Testamento abierto*. Por esa razón, adujo que el derecho de la peticionaria se limitaba a los ingresos, rentas o frutos de la porción del caudal sobre la que es usufructuaria.

A su vez, la Sucesión solicitó al foro primario que declarara nula la cláusula F del párrafo Tercero del *Testamento abierto*, por obligar de forma impermisible a los herederos a conmutar o adelantar el pago en efectivo del usufructo viudal. En su lugar, propuso resolver que, mientras los herederos no optaran por conmutar, a la peticionaria le correspondía una porción equivalente al once punto once por ciento (11.11%) de los ingresos generados por el caudal.

En la alternativa, de validarse la cláusula testamentaria en cuestión, la Sucesión abogó por que se resolviera que el valor de la conmutación se determinaría calculando el valor presente de una renta igual a esa porción del ingreso neto anual del caudal, multiplicado por la expectativa de vida de la peticionaria al momento de la conmutación. Del mismo modo, sostuvo que, en cualquier caso, se debía utilizar una tasa de rendimiento anual de dos punto

---

[6] Íd., págs. 85-164.

quince por ciento (2.15%), equivalente a la productividad real de los bienes.

El 5 de diciembre de 2017, la señora Vicioso Tueros presentó una *Moción de sentencia sumaria parcial* en la que solicitó al foro primario que declarara que la cláusula F del párrafo Tercero del *Testamento abierto* era válida.[7] En ese sentido, le instó a concluir que el causante correctamente mandató que la peticionaria debía recibir la mayor de las cantidades entre el pago adelantado y el valor conmutado de la cuota viudal. Por último, peticionó que el avalúo de la cuota viudal se determinara tomando en cuenta el valor actual en el mercado de los activos del caudal, el por ciento de usufructo, un rendimiento anual de seis por ciento (6%) y la expectativa de vida de la peticionaria a partir de la muerte del causante.

Por su parte, la Sucesión presentó su propia moción de sentencia sumaria en la que solicitó que: (1) se invalidara la referida cláusula testamentaria; (2) no se le concediera legitimación a la señora Vicioso Tueros para exigir la conmutación del usufructo viudal; y (3) se reconociera el derecho de los herederos a optar por pagar a la peticionaria la proporción correspondiente de los ingresos netos que generan los activos del caudal.[8] Según su posición, el testador no ostentaba la facultad legal para obligar a sus herederos forzosos a conmutar el usufructo viudal.

---

[7] Íd., págs. 165-211.

[8] Íd., págs. 212-248.

El 31 de enero de 2020, el Tribunal de Primera Instancia dictó una *Sentencia Parcial* en la que declaró ha lugar la *Moción de sentencia sumaria* promovida por la peticionaria.[9] Según su criterio, el causante ejerció válidamente su facultad de conmutar el usufructo viudal mediante un pago de $5,000,000.00 a la señora Vicioso Tueros en adelanto y la satisfacción de cualquier diferencia superior a esa cantidad una vez se culminara el avalúo de la cuota. No obstante, puntualizó que, aunque el causante únicamente precisó que esa diferencia debía ser entregada en efectivo, guardó silencio en cuanto a si la cantidad debía pagarse completa o inmediatamente. Por esa razón, concluyó que este dejó cómo satisfacer la cuota viudal al arbitrio de sus herederos.[10]

En consecuencia, el foro primario resolvió que, según la voluntad del señor Suárez Sánchez, la Sucesión debía pagar los $5,000,000.00 lo antes posible y debía comenzarse el avalúo de la cuota viudal para su satisfacción conforme a las normas establecidas por el causante. A tal efecto, dictaminó que el desembolso de la cuota debía seguir el Art. 765 del Código Civil de 1930, 31 LPRA ant. sec. 2415, y, por ello, una vez se determinara el valor de esta, los herederos

---

[9] El 21 de febrero de 2020, el foro de primera instancia emitió una *Sentencia Parcial Nunc Pro Tunc* en la que únicamente corrigió la parte que se identificó como autora de cierta solicitud hecha en una vista de estado de los procedimientos. Véase el Apéndice del *Alegato* de la peticionaria, págs. 249-286.

[10] A su juicio, esta era la expresión clara e inequívoca de la voluntad del causante porque, en este aspecto, no especificó la forma de liquidar el exceso, mientras que en otros fue enfático, claro y específico.

podrían escoger la forma y manera de realizar los pagos en exceso del adelanto.

Inconformes, tanto la peticionaria como la Sucesión y el albacea acudieron al Tribunal de Apelaciones.[11] Producto de ambas apelaciones, el 27 de octubre de 2021, el foro intermedio emitió una *Sentencia* en la que modificó el dictamen del Tribunal de Primera Instancia y resolvió que el pago de los $5,000,000.00 en adelanto debía efectuarse a título de legado y que el pago en exceso a esa cantidad debía hacerse en dinero en efectivo.[12] Así, validó el inciso (iii) de la cláusula F del párrafo Tercero del *Testamento abierto*, ordenó a los herederos a pagar el legado en efectivo y comenzar lo antes posible el avalúo de la cuota viudal.

Según el foro intermedio, el causante estaba facultado para disponer de su patrimonio de la manera en que lo hizo y, en ejercicio de ello, su última voluntad fue que la diferencia <u>fuera pagada en efectivo</u>. Por ello, razonó que <u>esa acción constituyó una conmutación válida</u> en la que el causante protegió la legítima de quien fue su esposa, la señora Vicioso Tueros. Sobre esa conclusión, decretó que "[r]esolver lo contrario [que no conmutó], pondría la facultad de los herederos de administrar la herencia por

---

[11] El recurso de la señora Vicioso Tueros recibió el identificador alfanumérico KLAN202000411, mientras que la apelación de la Sucesión y el albacea obtuvo el KLAN202000471. Ambos recursos fueron consolidados y atendidos por el Tribunal de Apelaciones en su dictamen.

[12] Apéndice del *Alegato* de la peticionaria, págs. 287-309.

encima de la última voluntad real del testador sobre la distribución de sus bienes luego de su muerte".[13]

Aún en desacuerdo, la Sucesión y el albacea presentaron un *Recurso de certiorari* ante esta Curia. El 1 de abril de 2022, declaramos no ha lugar el recurso.

Devuelto el caso al foro primario, el litigio prosiguió su curso[14] hasta que, el 18 de septiembre de 2024, el Tribunal de Primera Instancia emitió la *Resolución* recurrida.[15] En ella, dictaminó, en lo concerniente, que los herederos podrían conmutar cualquier cantidad por encima del adelanto mediante el pago de una renta vitalicia a la peticionaria, equivalente a lo que hubiese recibido como usufructuaria del caudal. Asimismo, preceptuó que, de ser necesario tasar las acciones para calcular el usufructo viudal, se utilizaría el valor en los libros, no el valor en el mercado.

Oportunamente, la peticionaria recurrió ante el Tribunal de Apelaciones, el cual denegó la expedición del *certiorari*.[16]

---

[13] Íd., pág. 308.

[14] De los trámites procesales anteriores al dictamen recurrido, únicamente cabe resaltar que el foro primario confirmó que la Sucesión pagó la totalidad de los $5,000,000.00 en adelanto a la señora Vicioso Tueros. Véase Apéndice de la petición de *Certiorari*, págs. 654-655 (*Sentencia* del Tribunal de Apelaciones en el KLCE202300579).

[15] Apéndice del *Alegato* de la peticionaria, págs. 714-725.

[16] Íd., págs. 840-850.

En desacuerdo, la señora Vicioso Tueros acudió ante nos y solicitó que revoquemos las resoluciones dictadas por los foros recurridos. En específico, al Tribunal de Apelaciones le imputó la comisión de los siguientes errores:

(1) Erró el [Tribunal de Apelaciones] al no revocar la decisión del [Tribunal de Primera Instancia] que concluyó que procede valorar las acciones corporativas a base de su valor en los libros y no a base del valor en el mercado de todos sus activos.

(2) Erró el [Tribunal de Apelaciones] al no revocar la decisión del [Tribunal de Primera Instancia] que le otorgó el derecho unilateral a los coherederos demandados de decidir cómo pagar la diferencia entre el valor real de la cuota viudal usufructuaria y el monto adelantado de $5 millones por sobre la objeción de doña Rosa, a pesar de que conforme a lo dispuesto en el testamento de Don Vicente, y según determinado por Sentencia final y firme del 27 de octubre de 2021 del [Tribunal de Apelaciones] que constituye la ley del caso, y además en consideración de la edad avanzada de Doña Rosa, tal balance debe liquidársele a Doña Rosa inmediatamente en un solo pago en efectivo como cuestión de derecho.

Por todo ello, expedido el auto discrecional, nos pidió que instruyamos al Tribunal de Primera Instancia a: (1) valorar los bienes del caudal del causante; (2) tasar las acciones según su valor en el mercado, de acuerdo con la norma establecida en *Fernández v. Fernández*, *infra*; (3) ordenar que el balance remanente entre el valor de la cuota viudal usufructuaria y el monto adelantado se liquide inmediatamente en un solo pago en efectivo, en consideración del *Testamento abierto*, la *Sentencia* del Tribunal de Apelaciones del 27 de octubre de 2021 y la edad avanzada de la peticionaria; y (4) utilizar en el avalúo una participación de la peticionaria en el caudal del doce punto

veintidós por ciento (12.22%), un factor de rendimiento del caudal de seis por ciento (6%) y la expectativa de vida de la peticionaria al momento en que falleció el causante.

En oposición, la Sucesión solicitó que confirmemos a los foros recurridos. En primer orden, argumentó que la *Resolución* recurrida reiteró las determinaciones de la *Sentencia Parcial Nunc Pro Tunc* del 21 de febrero de 2020, según fue modificada por el Tribunal de Apelaciones. En ese respecto, indicó que no había conflicto entre el lenguaje empleado por el foro intermedio y la modalidad de conmutación mediante renta vitalicia pagada en efectivo.

En segundo orden, arguyó que este Tribunal no posee jurisdicción para emitir el remedio solicitado por la peticionaria, toda vez que, a su juicio, intenta revisar dictámenes finales y firmes, emitidos por el Tribunal de Primera Instancia y el Tribunal de Apelaciones.

En tercer orden, defendió el dictamen recurrido y planteó que era correcto en derecho, cónsono con la intención del testador y a fin con el propósito de la conmutación, pues busca sustituir el ingreso que como usufructuaria hubiese recibido la señora Vicioso Tueros. Según reiteró, la facultad de escoger la modalidad en que se conmutará la cuota viudal usufructuaria no la posee el cónyuge supérstite, sino los herederos. A su entender, la intención testamentaria clara del causante fue que la peticionaria recibiera el adelanto y un ingreso garantizado por el resto de su vida.

En cuarto orden, planteó que la valoración total de los activos del caudal está pendiente ante el foro primario y, por eso, esta Curia carece de jurisdicción para atenderla. Igualmente, defendió la orden de tasar las acciones en el caudal según su valor en los libros. Eso, pues, según su posición, el caso de *Fernández v. Fernández*, *infra*, es distinguible de este porque la controversia en esa ocasión no concernía valorar el usufructo viudal y tampoco existían restricciones impuestas por el causante para la venta de las acciones. Asimismo, esbozó que el valor en el mercado de la mayoría de las acciones concernidas equivale al valor en los libros, porque los estatutos corporativos de las empresas que las emitieron estipulan una fórmula específica para el precio de su venta.

Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver, no sin antes examinar el derecho aplicable a las controversias previamente esbozadas.

II

A.

En materia de sucesiones, la voluntad del testador es la ley de la sucesión. *Vilanova et al. v. Vilanova et al.,* 184 DPR 824, 858 (2012); *Moreda v. Rosselli*, 150 DPR 473, 480 (2000); *Vda. de Sambolín v. Registrador*, 94 DPR 320, 327 (1967). Sin embargo, para discernirla, se requiere interpretar el testamento, problema tan antiguo como la figura del testamento mismo. E. González Tejera, *Derecho de Sucesiones*, San Juan, Editorial de la Universidad de Puerto

Rico, 2001, T. II, pág. 54. Esto, pues, se busca el significado una vez ha fallecido el testador y le toca a otra persona reconstruir lo que efectivamente quiso este. *Licari v. Dorna*, 148 DPR 453, 461 (1999).

Respecto a esa tarea interpretativa, el primer párrafo del Art. 624 del Código Civil de 1930, 31 LPRA ant. sec. 2129, ofrece importantes normas de hermenéutica testamentaria al disponer lo siguiente:

> Toda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, a no ser que aparezca claramente que fue otra la voluntad del testador. En caso de duda se observará lo que parezca más conforme a la intención del testador según el tenor del mismo testamento.[17]

Según se desprende de este articulado, lo que se ordena es que prevalezca la *voluntad real* del testador. *Moreda v. Rosselli*, supra; *Torre Ginés v. E.L.A.*, 118 DPR 436, 445 (1987). Por ello, se les impone a los tribunales el rol fundamental de descubrirla para que se produzca el efecto que el testador ha deseado, dentro de lo que permite la ley. *Moreda v. Rosselli*, supra; *Torre Ginés v. E.L.A.*, supra. En otras palabras, la misión principal del tribunal será dirimir las controversias sobre la interpretación del testamento en casos de disputas entre los herederos sobre los alcances o la inteligencia de sus disposiciones.

---

[17] Resolvemos a partir del Código Civil de Puerto Rico de 1930, *supra*, porque era el estatuto vigente al momento del fallecimiento del causante. Pese a su derogación en 2020, nos referimos a sus disposiciones en término presente por ser el derecho aplicable.

González Tejera, *op. cit.*, Tomo II, págs. 75-76, citando a *Rivera Padró v. Rivera Correa*, 93 DPR 196, 205 (1996).

Como primer paso, procede examinar el texto de la disposición testamentaria en cuestión. *Licari v. Dorna*, *supra,* pág. 461. Cuando ese texto sea claro y permita que de una simple lectura se determine el propósito del causante, entonces los tribunales no deberán ir más allá. Íd.; *Moreda v. Rosselli*, *supra*, pág. 481; *Torre Ginés v. E.L.A.*, *supra*, pág. 445.

Como segundo paso, si la lectura literal del texto no resulta suficiente y subsisten dudas porque la voluntad es oscura, ambigua o está consignada de forma imprecisa, deficiente o contradictoria, entonces será necesario acudir a la segunda oración del Art. 624 del Código Civil de 1930. *Licari v. Dorna*, *supra*, págs. 461-462. Es decir, procederá observar "lo que parezca más conforme a la intención del testador según el tenor del mismo testamento". 31 LPRA ant. sec. 2129. Al hacerlo, debe emplearse un análisis integrado del testamento porque es el conjunto de todas sus cláusulas el que compone la verdadera voluntad del testador. *Licari v. Dorna*, *supra*, pág. 462. Por eso, tampoco es permisible estudiar las frases o palabras testamentarias de forma aislada. Íd.

En este ámbito, se utilizan medios de prueba intrínsecos al testamento, los cuales incluyen el análisis lógico, con énfasis en el elemento racional; el sistemático, guiado por la totalidad de las declaraciones testamentarias; y el teleológico, impulsado por el verdadero sentido que

motivó al testador. Íd.; *Torre Ginés v. E.L.A., supra*, págs. 448-449.

Como tercer paso, solamente si se agotan los medios intrínsecos anteriores, será permisible acudir a la prueba extrínseca. *Licari v. Dorna, supra*, pág. 462; *Torre Ginés v. E.L.A., supra*, pág. 450. En esta etapa, se estudia la conducta, las declaraciones o los actos del testador, así como testamentos anteriores, cartas, los hábitos y las costumbres del causante, el clima prevaleciente en las relaciones de familia y el lenguaje que el causante acostumbraba a utilizar, entre otros medios. *Licari v. Dorna, supra*, págs. 462-463. En este contexto, siempre tendrá enorme trascendencia la cultura, las costumbres, la mentalidad y el grado de cultura jurídica del testador. *Licari v. Dorna, supra*, pág. 463; *Torre Ginés v. E.L.A., supra*, pág. 450, citando a J. B. Jordano Barea, *Interpretación del testamento*, Barcelona, Ed. Bosch, 1958, pág. 13.

En resumidas cuentas, la regla básica en nuestra jurisdicción para la interpretación de testamentos es que "debe prevalecer la *voluntad querida* por el testador siempre que sea posible su determinación, según el tenor del mismo testamento, aunque para ello tenga que hacerse caso omiso de la *voluntad declarada*". (Bastardillas nuestras). González Tejera, *op. cit.*, Tomo II, pág. 60. Sin embargo, cabe puntualizar que, indistintamente del medio de hermenéutica utilizado, no se puede sustituir la *voluntad declarada* por el causante con otra no expresada en lo absoluto, ni incluir

lo no dicho o dar por cumplido lo omitido. *Licari v. Dorna*, *supra*, pág. 464.

B.

La legítima es la porción de bienes que el testador no puede disponer porque se reserva a ciertos herederos o herederas por virtud de ley. Art. 735 del Código Civil de 1930, 31 LPRA ant. sec. 2361. Entre estos, denominados herederos forzosos, se ubica a los descendientes del causante y al cónyuge supérstite. Art. 736 del Código Civil de 1930, 31 LPRA ant. sec. 2362; *Clavelo Pérez v. Hernández García*, 177 DPR 822, 837 (2010); *González de Salas v. Vda. de González*, 99 DPR 577, 585 (1971); *Luce & Co. v. Cianchini,* 76 DPR 165, 172 (1954).

Sin embargo, a diferencia de los descendientes, el cónyuge supérstite no hereda en pleno dominio de su porción, sino que tiene derecho a una cuota en usufructo. Art. 761 del Código Civil de 1930, 31 LPRA ant. sec. 2411; *Clavelo Pérez v. Hernández García*, *supra*, pág. 837; González Tejera, *op. cit.*, Tomo I, pág. 101. A esa figura se le conoce como el usufructo viudal y constituye, para todos los efectos, la legítima del cónyuge supérstite. *Clavelo Pérez v. Hernández García*, *supra*, pág. 838. A través de ella, se busca amparar al cónyuge supérstite y evitar que, tras la muerte de su pareja, descienda de repente de la altura de su posición económica a un estado de pobreza. *Ripoll Alzuru v. Rosa Pagán*, 121 DPR 1, 6-7 (1988); González Tejera, *op. cit.*, Tomo I, págs. 99-100.

Cónsono con eso, el usufructo viudal está protegido en varios aspectos. **Primero**, el cónyuge supérstite no puede ser preterido y puede solicitar el complemento de su legítima. Arts. 742 y 743 del Código Civil de 1930, 31 LPRA ant. sec. 2368-2369. Ma. de los A. Diez Fulladosa, *La herencia: Su régimen jurídico en Puerto Rico*, San Juan, InterJuris, 2015, pág. 167. **Segundo**, al cónyuge supérstite no puede privársele por testamento de lo que le corresponde, ni imponérsele carga o gravamen alguno. *Clavelo Pérez v. Hernández García*, *supra*, pág. 838. **Tercero**, como el usufructo viudal es vitalicio, no hay plazo o condición posible más allá de la vida del cónyuge supérstite. Íd., pág. 839. **Cuarto**, y más importante aún, en virtud de su rango de heredero forzoso, el cónyuge supérstite tiene que concurrir a las operaciones particionales hasta que se le satisfaga o conmute su cuota. *Clavelo Pérez v. Hernández García*, *supra*, pág. 837; *Colón Gutiérrez v. Registrador*, 114 DPR 850, 858 (1983). **Quinto**, similarmente, hasta tanto no suceda esa conversión, conmutación o satisfacción del usufructo viudal, todos los bienes de la herencia estarán gravados por el usufructo viudal. Art. 765 del Código Civil de 1930, 31 LPRA ant. sec. 2415; *Clavelo Pérez v. Hernández García*, *supra*, pág. 837; *Calimano Díaz v. Rovira Calimano*, 113 DPR 702, 709 (1983).

En virtud de lo anterior, resulta primordial calcular qué le corresponde al cónyuge supérstite por concepto de usufructo viudal. Para eso, por un lado, procede evaluar la porción hereditaria que le toca al cónyuge supérstite, así como el tercio del caudal de donde provendría, según aquellos

parientes del causante con los que concurra. Arts. 761-765 del Código Civil de 1930, 31 LPRA ant. sec. 2411-2414 y 2416.

Por el otro, en aras de protegerse adecuadamente los derechos del cónyuge supérstite, también es necesario calcular el valor de los bienes de la herencia al momento en que se formalice la conmutación. *Clavelo Pérez v. Hernández García*, *supra*, págs. 837-838; *Colón Gutiérrez v. Registrador*, *supra*, pág. 861. El concepto de la conmutación, denominada también conversión o sustitución del usufructo, implica la satisfacción por los herederos o herederas de la cuota del cónyuge viudo o de la cónyuge viuda. *Colón Gutiérrez v. Registrador*, *supra*, pág. 859. Por medio de ella se facilita la partición, se evitan los inconvenientes jurídicos de mantener los bienes hereditarios sujetos al usufructo, se termina la comunidad hereditaria creada tras la muerte del causante y se permite la circulación y transmisión de los bienes del caudal. J. A. Fernández Campos, *El pago de la legítima al cónyuge viudo*, Valencia, Ed. Tirant lo Blanch, 2004, págs. 69-70. En ese sentido, en aras de proteger adecuadamente los derechos del cónyuge supérstite, es necesario considerar el valor de los bienes de la herencia al momento en que se formalice la conmutación. *Clavelo Pérez v. Hernández García*, *supra*, págs. 837-838; *Colón Gutiérrez v. Registrador*, *supra*, pág. 861. Además, no es hasta que la conmutación ocurre que el cónyuge supérstite recibe su participación en pleno dominio. González Tejera, *op. cit.*, Tomo I, pág. 101.

En este tema, de ordinario, las personas herederas poseen la facultad de satisfacer al cónyuge su parte "asignándole una renta vitalicia, o los productos de determinados bienes, o un capital en efectivo, procediendo de mutuo acuerdo, y, en su defecto, por virtud de mandato judicial". Art. 765 del Código Civil de 1930, 31 LPRA ant. sec. 2415. Ahora bien, en virtud de esta disposición, los tribunales tienen la autoridad para decidir la forma de pago más equitativa y justa entre las que establece la ley. *Calimano Díaz v. Rovira Calimano*, *supra*, págs. 710-711. En ese respecto, ante inconformidad sobre el método propuesto para satisfacer el usufructo, los tribunales intervendrán "no para invalidar la decisión de conmutar, para lo que no tendrían jurisdicción, […] sino para sustituir la forma de pago, a fin de hacer cumplida justicia al [cónyuge supérstite] o, incluso, para hacer valer su derecho a que el deudor o los deudores afiancen o garanticen el pago de la pensión acordada". González Tejera, *op. cit.*, Tomo I, págs. 103-104. Al ejercer ese rol, los tribunales pueden integrar la conmutación controvertida con la solución más ajustada al caso según sus circunstancias particulares, con especial atención a la edad del cónyuge viudo o el rendimiento promedio de los bienes del caudal. (Citas omitidas). Fernández Campos, *op. cit.*, pág. 142.

Entretanto, en la modalidad de pago mediante capital en efectivo se le entrega al cónyuge supérstite una suma de dinero o bienes de la herencia. J. Muñiz Belbrú, *Herencia: el usufructo viudal (determinación y liquidación)*,

*conmutación (Artículo 765 cc.)*, Ponce, Ed. Sur Office, 1997, pág. 39. Al ejecutarse esta modalidad, a diferencia de las otras opciones de conmutación, se liquida totalmente la participación del cónyuge viudo y se pone fin a la relación económica con los herederos. Íd. Por esta vía, el cónyuge viudo emerge como único titular del dinero o bien que se le otorgue. Íd. Es decir, se habrá extinguido totalmente su cuota usufructuaria.

En la modalidad de renta vitalicia, los herederos asumen una obligación personal de satisfacer una pensión al cónyuge supérstite sin que haya una transferencia de bienes. Íd. Para asegurar la renta, los herederos -deudores- deben proveer garantías suficientes. Íd. Ante ello, el cónyuge supérstite adviene titular de un derecho de crédito a recibir la renta periódica vitalicia, así como a reclamar judicialmente las referidas garantías o el ajuste de la renta si ha disminuido el poder adquisitivo de la moneda. Íd.; Fernández Campos, *op. cit.*, págs. 154-155.

Ahora bien, sobre la elección de la forma de satisfacer el usufructo viudal, hemos establecido que esa facultad únicamente puede ser ejercitada una vez y antes, o al momento, de la partición. *Colón Gutiérrez v. Registrador*, *supra*, pág. 861; J. Vallet de Goytisolo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. de Derecho Privado, 1982, T. XI, pág. 483. No obstante, si bien, de ordinario, la facultad de escoger el modo de pagar la cuota recae en los herederos, la doctrina se divide en cuanto

a si el testador tiene facultad para optar en el testamento por una de las tres opciones de satisfacer el usufructo viudal. Vallet de Goytisolo, *op. cit.*, págs. 475-477 (en su análisis del Art. 839 del Código Civil español, equivalente idéntico al Art. 765 del Código Civil de 1930).

En el caso de Vallet de Goytisolo y otros tratadistas, como Manresa Navarro, De La Cámara Álvarez, Gullón Ballesteros y Fernández Campos, la respuesta es, en esencia, en la afirmativa, siempre y cuando no se perjudiquen los derechos legitimarios del cónyuge viudo o los herederos forzosos. Íd.; Fernández Campos, *op. cit.*, págs. 120-127. En cambio, para otros autores, como Mezquita del Cacho y, en cierta medida, Cárcaba Fernández y Lacruz Berdejo, esa facultad es propia de los herederos. Íd., págs. 475-476; Fernández Campos, *op. cit.*, pág. 121.

En consideración a ello y en sintonía con nuestra amplia tradición jurídica de que la voluntad del testador constituye la ley de la sucesión, a la que debe darse estricto cumplimiento, no encontramos óbice para que a las personas testantes en nuestra jurisdicción se les reconozca la potestad, en virtud del Código Civil de 1930, *supra*, para escoger la forma en la que será conmutada la cuota viudal, en la medida en que su resultado no perjudique los derechos que por legítima pertenezcan a los herederos forzosos, incluyendo al cónyuge supérstite.

C.

El Código Civil de 1930, *supra*, impone ciertas restricciones a la facultad de las personas de disponer de sus bienes para después de la muerte. Entre ellas figuran la protección de la legítima de los herederos forzosos y los límites a la mejora. Es en virtud de estas garantías que, para dar lugar a la partición de la herencia, resulta imprescindible valorar los bienes relictos de la persona testante.

En ese ejercicio, al determinar el valor de la legítima, es menester valorar los bienes de la herencia según su *valor real*. *Fernández v. Fernández*, 152 DPR 22, 35 (2000). Así, "[l]a tasación debe reflejar en todo momento los valores reales para todos los elementos de activo del caudal, muebles e inmuebles, de manera que en su día no se perjudiquen unos y se beneficien otros". González Tejera, *op. cit.*, Tomo II, pág. 469.

Conviene reseñar que, en *Fernández v. Fernández*, *supra*, ante un testamento que requería valorar ciertas acciones corporativas del caudal según su valor en los libros de la corporación, resolvimos que, para obtener su valía real y respetar la voluntad del testador, procedía tasarlas según su valor en el mercado.[18]

---

[18] Por valor en el mercado o *fair market value* se entiende: "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts". (Citas omitidas). *Connelly v. United States*, 602 US 257, 260 (2024); *U.S. v. Cartwright*, 411 US 546, 551 (1973).

En esa ocasión, el testador dispuso que: (1) cuatro (4) hijos recibirían sus participaciones hereditarias en propiedad inmueble y en acciones de cierta corporación, en partes iguales; (2) seis (6) nietos, procreados por un hijo premuerto, recibirían únicamente acciones de la corporación; y (3) un hijo de crianza recibiría como legado una porción igual a la de sus hijos en acciones de la corporación y propiedad inmueble. Además, testó que las acciones serían valorizadas conforme a su valor en los libros de la corporación a la fecha de su fallecimiento, mientras que los inmuebles serían valorizados según el valor que les fijara el Secretario de Hacienda. Íd.

Fallecido el testador, surgió una controversia sobre la valoración de los activos estrechamente parecida a la controversia de autos. Por un lado, los allí herederos forzosos argumentaron que adjudicar las acciones según su valor en los libros corporativos impediría el cumplimiento de la voluntad del fallecido y violentaría sus legítimas. Por el otro, los nietos arguyeron que, como la corporación era una familiar, las acciones no tenían un valor conocido en el mercado.

Entretanto, para el foro primario, las cláusulas testamentarias respecto a la forma de valorar las acciones y los inmuebles debían tenerse por no puestas, para así poder cumplir con la voluntad "equiparadora" del testador. Íd., pág. 31. En contraste, para el foro intermedio, la valoración de las acciones debía hacerse según los libros corporativos.

Interpretado el testamento, consignamos que este arrojaba palmariamente la voluntad del testador de igualar a sus hijos, nietos e hijo de crianza. Íd., pág. 37. Asimismo, aunque el testador dispuso cómo valorar las acciones y los inmuebles que le pertenecían, subrayamos que no contempló las consecuencias de ello. Íd. Esto, pues, si se adjudicaban las acciones según su valor en los libros de la corporación, se verían perjudicados los hijos frente a los nietos. Íd.

En ese aspecto, <u>la diferencia entre el valor según los libros y el valor real en el mercado era abismal</u>, ya que según los libros de la corporación una acción valía casi quinientos dólares ($500.00), mientras que el valor real estimado era de poco más de mil ochocientos dólares ($1,800.00). Íd., pág. 38. La razón de esa diferencia respondía a que las acciones representaban el capital de la compañía, la cual poseía valiosos activos <u>cuyos valores no se reflejaban en los libros</u>. Íd. Estos bienes incluían <u>intangibles</u>, como la fórmula y marca de fábrica de ciertos productos y la plusvalía de la compañía, así como <u>inmuebles</u>, como una valiosa finca cuyo costo era insignificante frente a su precio millonario en el mercado. Por último, también hallamos disparidad entre la forma escogida para valorar los inmuebles por el Secretario de Hacienda y su verdadero valor en el mercado. Íd.

Por eso, en aquel entonces, concluimos que realizar la partición en la forma testada contravendría la voluntad

"equiparadora" del testamento y violentaría el derecho aplicable. Íd., pág. 40. Consecuentemente, resolvimos que la forma de valorar los bienes que escogió el testador se tendría por no puesta. Íd. Normativamente, pautamos que las personas testantes podrían señalar el valor de los bienes hereditarios para fines de adjudicarlos, siempre y cuando exista adecuación entre la valoración y su voluntad. Íd., pág. 41.

III

Como adelantamos, tenemos como tarea resolver si los herederos pueden escoger la renta vitalicia como la forma de satisfacer el usufructo viudal de una cónyuge supérstite, a pesar de que el testador dispuso que la manera de conmutar el usufructo viudal se haría en efectivo. Asimismo, procede que adjudiquemos si ciertas acciones corporativas del caudal relicto deben tasarse según su valor en los libros corporativos o en el mercado.

A.

Respecto a la primera de estas controversias, a juicio del foro primario, los herederos pueden conmutar el usufructo viudal mediante el pago de una renta vitalicia. Esto, debido a que, según su criterio, el causante ordenó que se pagara en efectivo el valor del usufructo viudal en exceso de los $5,000,000.00 que se brindaron como adelanto, pero no precisó cómo ni cuándo quería que se efectuara el pago.

En cambio, para la señora Vicioso Tueros, conforme al testamento del causante, a la *Sentencia* del Tribunal de

Apelaciones del 27 de octubre de 2021 y a su edad, los herederos no poseen esa potestad. En su lugar, plantea que están obligados a saldar en efectivo cualquier diferencia entre el valor del usufructo viudal y el adelanto de $5,000,000.00.

Por su parte, la Sucesión arguye que la facultad de escoger la modalidad de conmutación de la cuota viudal es exclusiva de los herederos y que la voluntad del causante fue que la peticionaria recibiera un adelanto y un ingreso asegurado por el resto de su vida.

Ahora bien, en atención al testamento, la voluntad real del causante, las determinaciones previas en este caso y el derecho aplicable, resulta palmario que el Tribunal de Primera Instancia erró al resolver que los herederos forzosos podían escoger la renta vitalicia para satisfacer el usufructo viudal que le corresponde a la señora Vicioso Tueros. Veamos.

De inicio, una lectura del *Testamento abierto* arroja instrucciones claras del causante en este respecto, en específico que: (1) la señora Vicioso Tueros debía recibir el adelanto de $5,000,000.00 lo antes posible, para lo cual se podrían vender activos invertidos; (2) el avalúo de la cuota viudal usufructuaria sobre sus bienes también debía efectuarse lo antes posible; (3) si el avalúo redundaba en un valor mayor al adelanto, la diferencia debía ser entregada en efectivo en moneda legal de los Estados Unidos; (4) si el avalúo resultaba en un valor menor a $5,000,000.00, la peticionaria debía recibir el adelanto, como mínimo; (5) la peticionaria debía percibir el usufructo vitalicio de cierto apartamento,

residencia del causante; y (6) la peticionaria no debía recibir acciones o participación patrimonial en cualquiera de las empresas del Grupo V. Suárez, ni de otros valores, acciones o inmuebles que poseyera el causante, bajo ninguna circunstancia.

Estas instrucciones, todas consignadas en la cláusula F del párrafo Tercero del *Testamento abierto,* demuestran diáfanamente que la voluntad real del señor Suárez Sánchez fue que la señora Vicioso Tueros recibiera, como parte de la cuota viudal, el adelanto, cualquier diferencia superior en efectivo y el usufructo sobre la residencia del causante, ubicada en Santurce, Puerto Rico. De ahí que, ante la posible dilación en el avalúo para el pago de la cuota, ordenara sabiamente la entrega de una cantidad como adelanto y como mínimo asegurado. Incluso, el causante fue más allá al garantizar que la diferencia se satisficiera mediante el pago en efectivo. Entiéndase, no mediante una renta vitalicia, como aduce la parte recurrida, sino a través de un pago en efectivo y en moneda legal.

Ante ese lenguaje claro y específico de la disposición testamentaria, no hay cabida para otra interpretación de la voluntad manifiesta del señor Suárez Sánchez. En esa medida, este optó por el capital en efectivo y en moneda legal como el método de satisfacer la legítima de su cónyuge en caso de su muerte. Esta es una facultad disponible a las personas testantes que, además, está en sintonía con nuestra tradición jurisprudencial de reconocer la validez de disposiciones

testamentarias cuando no perjudiquen derechos legitimarios o no sean contrarias a la ley, la moral y el orden público.

Además, esta disposición testamentaria es cónsona con el propósito de la conmutación, toda vez que, llevada a cabo eficientemente, facilita la partición, la liberación de los bienes hereditarios sujetos al usufructo viudal y la circulación de los bienes del caudal. Fernández Campos, *op. cit.*, págs. 69-70. Asimismo, al escoger la forma de satisfacer la legítima de la señora Vicioso Tueros, el testador procuró anticiparse al requisito de mutuo acuerdo entre los herederos y evitar la revisión judicial que preceptúa el Art. 765 del Código Civil de 1930, *supra*. En igual sentido, resolvemos que el testador respetó la razón de ser del usufructo viudal de amparar a la cónyuge viuda y evitar que descendiese de su posición económica. *Ripoll Alzuru v. Rosa Pagán, supra*; González Tejera, *op. cit.*, Tomo I, págs. 99-100. Cónsono con todo ello, incluyó varias disposiciones testamentarias a los efectos de que los pagos y el avalúo se hicieran a la mayor brevedad posible y sin necesidad de la intervención judicial.

Al mismo tiempo, a diferencia de lo que aduce la Sucesión, la última voluntad plasmada en el testamento por el causante incluyó solo un beneficio de carácter vitalicio para la viuda: el usufructo de la residencia antes mencionada. De haber querido también una renta vitalicia para la señora Vicioso Tueros, así lo hubiese plasmado expresamente. En contrario, testó un adelanto y un pago en exceso de este, en efectivo y en moneda legal. Esta disposición testamentaria de adelantar

parte de la cuota, sumada a la aspiración de que el avalúo se hiciera lo antes posible y al deseo claro e inequívoco de que la peticionaria no recibiera acciones, valores o estuviera atada a las inversiones patrimoniales, reafirma fuertemente la voluntad del causante de que la cuota viudal fuera satisfecha con urgencia y de evitar que se extendiera el usufructo sobre los bienes del caudal, en beneficio también de sus demás herederos.

Resolvemos que, por mandato testamentario, la Sucesión deberá satisfacer la cuota viudal usufructuaria mediante un pago en efectivo. En consecuencia, si el avalúo del usufructo viudal redunda en un valor mayor al adelanto, la diferencia deberá ser satisfecha de esa manera.

B.

Antes de proseguir a la segunda controversia, cabe atender la ley del caso aplicable a este.

Recordemos, en principio, que los derechos y las obligaciones adjudicados en los méritos mediante un dictamen judicial, advenido final y firme, constituyen la ley del caso entre las partes. *Cacho Pérez v. Hatton Gotay y otros*, 195 DPR 1, 8 (2016); *Rosso Descartes v. BGF*, 187 DPR 184, 192 (2012). Cónsono con ello, de ordinario, una vez el foro primario o el intermedio resuelven controversias en los méritos, estas no se pueden reexaminar y vinculan a ambos tribunales. Íd., pág. 9; *Rosso Descartes v. BGF, supra*. Esta doctrina, sin embargo, no es un mandato inflexible, sino una costumbre deseable que puede ceder si las determinaciones previas son erróneas y pueden

conducir a una grave injusticia o a resultados claramente injustos. Íd., págs. 9-10. En este contexto, cabe notar que las denegatorias de un tribunal apelativo a expedir un recurso discrecional no significan que el dictamen revisado esté libre de errores ni constituye una adjudicación en los méritos. Íd., pág. 10; *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008). Repasado ese derecho, consideremos la ley que impera sobre este caso.

Previo a la *Resolución* recurrida, en este caso advino final y firme una *Sentencia* del Tribunal de Apelaciones, emitida el 27 de octubre de 2021, en la que ese foro modificó un dictamen parcial del Tribunal de Primera Instancia y resolvió que el adelanto a la señora Vicioso Tueros debía hacerse como legado y el exceso saldarse en dinero en efectivo. De esa forma, el foro intermedio validó las disposiciones testamentarias del señor Suárez Sánchez respecto al usufructo viudal e interpretó el pago en efectivo como su última voluntad. Por eso, razonó que lo contrario implicaría permitirles a los herederos administrar la herencia por encima de la voluntad del testador.

En sintonía con lo reconocido por el foro intermedio, colegimos que el señor Suárez Sánchez escogió que la cuota viudal fuera satisfecha mediante capital en efectivo, además del usufructo sobre su residencia. Así, el testador dejó claro cómo debía pagarse la porción del caudal hereditario que correspondiese a su cónyuge supérstite. Autorizar que los herederos satisfagan la cuota mediante la renta vitalicia iría

en contra de ese dictamen y, sobre todo, constituiría lo que el foro apelativo advirtió en su *Sentencia*: la administración de la herencia en contravención de la última voluntad real del señor Suárez Sánchez.

Contrario a ello, la interpretación del foro primario en la *Resolución* recurrida y la posición de la Sucesión no respetan esta ley del caso y chocan con la voluntad del causante. Por esa razón, tampoco procede confirmar el dictamen recurrido, pues les reconoce una potestad a los herederos que fue ejercida por el señor Suárez Sánchez en el *Testamento abierto*. La elección de la forma de conmutar o satisfacer el usufructo viudal únicamente puede ser ejercitada una vez. *Colón Gutiérrez v. Registrador*, *supra;* Vallet de Goytisolo, *op. cit.*, pág. 483. Así lo hizo válidamente el testador. Así también lo reconoció la *Sentencia* emitida por el foro intermedio. En otras palabras, la forma de conmutar el usufructo viudal de la señora Vicioso Tueros ya estaba seleccionada y, por lo tanto, la Sucesión viene obligada a respetarla y satisfacerla en la manera que mandató el señor Suárez Sánchez: mediante el pago en efectivo.

C.

Respecto a la segunda controversia, para el foro primario, la tasación de las acciones corporativas que componen el caudal hereditario debe hacerse según su valor en los libros. A su parecer, ese es el mejor modo de cumplir con la voluntad del señor Suárez Sánchez porque fue él quien realizó un cálculo responsable basado en el valor de sus bienes al momento de

testar y consideró que la valía del usufructo viudal no necesariamente superaría el adelanto.

Esa apreciación la defiende también la Sucesión. Según plantea esta, el precedente de *Fernández v. Fernández*, *supra*, no aplica a la controversia porque allí no se trataba del usufructo viudal y no existían las mismas restricciones testamentarias respecto a las acciones. Además, argumenta que el valor del mercado de las acciones coincide con el valor en los libros porque los estatutos corporativos estipulan una fórmula para su precio.

En oposición, la señora Vicioso Tueros sostiene que las acciones deben valorizarse conforme a su valor en el mercado. Según argumenta, la valoración según los libros le sería altamente perjudicial debido a que no reflejaría la totalidad del valor real del caudal y a que, por disposición testamentaria, ella no podría recibir acciones corporativas. A tono con ello, recalca que, como los herederos demandados retendrán las acciones, una valoración baja, acomodaticia y artificial de estas les beneficia unilateralmente.

En este tema, en el pasado reconocimos que el valor real de ciertas acciones corporativas debía obtenerse según el valor que tuvieran en el mercado, en conformidad con la voluntad "equiparadora" del testador, el derecho aplicable y las consecuencias prácticas del avalúo. *Fernández v. Fernández*, *supra*. Hoy nos corresponde hacer lo mismo en el contexto del usufructo viudal, el *Testamento abierto* del señor Suárez Sánchez y ciertas acciones corporativas que componen cerca del

noventa por ciento (90%) del valor del caudal relicto.[19] En atención a todo ello, resulta forzoso concluir que la razón de ser de nuestra decisión en ese extremo en *Fernández v. Fernández, supra*, debe extenderse a este caso de forma determinante. Por ello, corresponde obtener el valor real de las acciones corporativas que componen el caudal mediante la tasación de su valor en el mercado. Veamos.

En primer orden, del *Testamento abierto* se desprende la voluntad del señor Suárez Sánchez de: (1) dividir los tercios de la mejora y la libre disposición entre sus nietos, principalmente, y sus hijas en menor proporción; (2) dejar a sus hijas todos los bienes inmuebles que existieran en el caudal y las acciones de cierta compañía como parte de su porción hereditaria; (3) proveer un adelanto para la señora Vicioso Tueros, así como capital en efectivo tras el avalúo de la cuota viudal y el usufructo de cierto apartamento; (4) prohibir que la peticionaria recibiera acciones o participaciones en las empresas, ni otros valores, acciones o inmuebles; y (5) plasmar fervientemente que sus herederos evitaran la intervención judicial.[20]

En específico, dejó a sus dos hijas lo que les corresponde por legítima, el diez por ciento (10%) del tercio de mejora, el diez por ciento (10%) del tercio de libre disposición, los

---

[19] Así lo reconocen las partes, al igual que un inventario y avalúo de bienes sometido por el albacea el 12 de octubre de 2023, según el valor en los libros. Véase Apéndice del *Alegato* de la peticionaria, págs. 520 y 891.

[20] Apéndice del *Alegato* de la peticionaria, págs. 53-55.

bienes inmuebles del caudal y las acciones de una de las compañías.[21] A los nietos les dejó el noventa por ciento (90%) del tercio de mejora y el noventa por ciento (90%) del tercio de libre disposición en partes iguales y por estirpes.[22] A la señora Vicioso Tueros le dejó un adelanto, el resto de la cuota en capital en efectivo y el usufructo de un apartamento, como parte del usufructo viudal.[23]

Para ejecutar esa diáfana voluntad, respetando las porciones asignadas a los herederos forzosos, los nietos y la cónyuge viuda, es necesario que la tasación de los bienes de la herencia del señor Suárez Sánchez refleje los valores reales de todos los activos del caudal en aras de que no se perjudiquen unos mientras se benefician otros. Esa tarea es mejor servida por la tasación según el valor en el mercado de todos los bienes en el caudal hereditario.

Lo anterior es primordial en atención a que, como en *Fernández v. Fernández*, *supra*, estamos ante acciones que representan el capital de corporaciones que poseen cuantiosos activos cuyos valores no se reflejan en sus libros. Por ejemplo, en este caso, el caudal está compuesto por un interés propietario de dieciocho punto cinco por ciento (18.5%) en varias corporaciones.[24] Entre estas, se destaca V. Suárez & Co. Inc., cuyo valor ocupa cerca del ochenta y cinco por ciento

---

[21] Íd., págs. 53-54.

[22] Íd., pág. 54.

[23] Íd., págs. 54-55.
[24] Íd., pág. 515.

(85%) del caudal, según los libros.[25] Sin embargo, en esa valoración no se contempla que ese interés también ha redundado en millonarios dividendos a través de los años para el caudal y las partes.[26] Igualmente, esa expresión de valor según los libros no contempla los bienes intangibles de esa empresa, así como su plusvalía, propiedad intelectual, marcas y derechos exclusivos. También, en esa tasación los inmuebles y el equipo de la empresa se valoran al costo. A esto se suma que, distinto a *Fernández v. Fernández*, *supra*, el señor Suárez Sánchez no expresó su voluntad en cuanto a cómo valorar las acciones y, por esa razón, no contamos con una directriz testamentaria al respecto.

Ante ese cuadro, la tarea de adjudicar el valor en el mercado de las acciones del caudal deberá ser descargada por el Tribunal de Primera Instancia. Esto deberá hacerlo en atención a lo aquí dispuesto y la prueba pericial que tengan a su haber presentar.

IV

Por los fundamentos antes expuestos, se revocan las resoluciones de los foros inferiores. Se devuelve el caso al foro primario para la continuación de los procedimientos a los fines de cumplir con lo aquí dispuesto. En específico, deberá llevar a cabo con celeridad el avalúo de la cuota viudal usufructuaria y el pago en efectivo de cualquier remanente

---

[25] Íd. Según el documento, ese valor estimado se basó en el "derecho de tanteo de la entidad y sus accionistas o miembros".

[26] *Alegato* de la parte demandada-recurrida, pág. 11.

superior al adelanto. Asimismo, en ese ejercicio, deberá discernir el valor en el mercado de las acciones que componen el caudal hereditario, de conformidad con lo aquí establecido.

Se dictará *Sentencia* en conformidad.


Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rosa María Vicioso Tueros de Suárez<br><br>Peticionaria<br><br>v.<br><br>Margarita Odette Suárez Noya y otros<br><br>Recurridos | CC-2024-0802 | Certiorari |

Sentencia

En San Juan, Puerto Rico, a 27 de enero de 2026.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revocan las resoluciones de los foros inferiores. Se devuelve el caso al foro primario para la continuación de los procedimientos a los fines de cumplir con lo aquí dispuesto. En específico, deberá llevar a cabo con celeridad el avalúo de la cuota viudal usufructuaria y el pago en efectivo de cualquier remanente superior al adelanto. Asimismo, en ese ejercicio, deberá discernir el valor en el mercado de las acciones que componen el caudal hereditario, de conformidad con lo aquí establecido.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina.

Bettina Zeno González
Secretaria del Tribunal Supremo Interina